481 A.2d 1149

**ROLLINS OUTDOOR ADVERTISING INC., et al.**

v.

**STATE ROADS COMMISSION OF the STATE HIGHWAY ADMINISTRATION.**

No. 1695, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Oct. 5, 1984.

198

Stephen W. Swartz, Silver Spring, with whom were Stephen Z. Kaufman and Linowes & Blocher, Silver Spring, on brief, for appellants.

Clater W. Smith, Jr., Frederick, with whom were Shoemaker, Smith & Clapp, Frederick, Stephen H. Sachs, Atty. Gen., and Nolan H. Rogers, Asst. Atty. Gen., Baltimore, on brief, for appellee.

Argued before GETTY and BELL, JJ., and ROBERT L. KARWACKI, Associate Judge of the Eighth Judicial Circuit (now Associate Judge of the Court of Special Appeals), Specially Assigned.

GETTY, Judge.

This case is an appeal by Rollins Outdoor Advertising, Inc. and Rollins, Inc. (hereinafter referred to jointly as "Rollins") from several rulings of the Circuit Court for Frederick County, and from a jury determination of just compensation due Rollins for the removal of three outdoor advertising signs. The land on which the signs were located was acquired by the State Roads Commission of the State Highway Administration (hereinafter, "State") and a condemnation proceeding was subsequently filed by the State seeking the removal of the signs.

Rollins raises seven issues which we shall combine into four, namely:

1. Did the court err in ruling that the State acted in good faith and established a public necessity for condemning the signs?

2. Did the court err in permitting testimony regarding the reasons for condemning the signs at the compensation trial?

3. Was the jury verdict supported by the evidence?

4. Did the court err in ruling that Rollins was not entitled to relocation assistance?

*Background*

On July 11, 1979, the State acquired 6.38 acres of the Telum property in Frederick County for the purpose of upgrading the existing interchange at Route 85 and I-70. Rollins owned three outdoor advertising panels on the site on a year to year lease. Following the purchase by the State, Rollins paid rent to the State until the lease expired on June 1, 1980. The lease was not renewed by the Board of Public Works.

Prior to the expiration of the lease, Rollins and the State engaged in negotiations for an extension of the lease or acquisition of the signs as required by law. Md.Real Prop. Code Ann. § 12–208(a) (1981). The State wanted Rollins to remove two other advertising panels on a tract unrelated to this case and Rollins refused, because the State's offer of reimbursement for the signs was allegedly too low. Consequently, the lease pertaining to the three signs involved herein was not renewed and on July 9, 1980, the State filed a condemnation petition. The stated purpose for acquiring the signs was 'for the construction, reconstruction, improvement, maintenance and completion of the State System of Roads and Budgets, and designated as I-70 Southwest Quadrant of Maryland Route 355 Interchange-Safety Project in Frederick County, Maryland."

Thereafter, by motion for summary judgment, Rollins alleged:

1. That the State had not acted in good faith in proceeding with the condemnation;
2. That the State had not demonstrated adequate public necessity for the taking;
3. That Rollins was entitled to relocation assistance.

The Circuit Court (Wenner, J.) granted Rollins a bifurcated trial on the issues of good faith and necessity pursuant to Md.Rule 502 (now Rule 2–502), but denied Rollins' motion on the issue of relocation assistance. Thereafter, on May 13, 1982, the Circuit Court (Barrick, J.) ruled that the State did not act in bad faith and, further, that adequate public

necessity had been shown justifying acquisition of the signs. On September 13, 1982, a jury determined that just compensation for the taking was the sum of $12,250.00.

Rollins' motion for new trial, relating to relocation assistance, was denied and a subsequent appeal to this Court was dismissed as premature. A second motion for new trial, directed to "necessity" and "just compensation," was also denied by the trial court.

## Issue 1

■ Md. Transportation Article § 8–313 authorizes the State to acquire any land along or near any State highway "to protect the highway or any scenery along or near it" where the land is needed for immediate or proposed construction. Rollins argues that the signs do not interfere with the now completed intersection. Necessity for the taking, however, must be judged as of the time the action to condemn was undertaken, not by the result after construction.

■ The question of the necessity for the taking can only be successfully challenged in the courts when the action of the agency in determining the necessity for the taking was so oppressive, arbitrary, or unreasonable as to suggest bad faith, or its exercise of its discretionary power was fraudulent or such abuse of discretion as to amount to a breach of trust. *Davis v. Montgomery County*, 267 Md. 456, 298 A.2d 178 (1972).

■ In exercising its power of eminent domain, the State must act reasonably, in good faith, and only where public necessity for the taking exists. A reviewing court, the Circuit Court herein, shall determine whether adequate public necessity exists, and whether the decision is "so oppressive, arbitrary or unreasonable as to suggest bad faith." *Washington Suburban Sanitary Commission v. Santorios*, 234 Md. 342, 199 A.2d 206 (1964); *Masson v. Reindollar*, 193 Md. 683, 69 A.2d 482 (1949).

Rollins, admitting that it has no direct evidence of bad faith, contends that the motive for condemning was retribution for Rollins' refusal to accept the State's offer for the removal of two signs in an adjacent area along I–70. Pointing to Real Property Article § 12–208(a), which requires a public agency acquiring an interest in land to acquire at least an equal interest in other structures thereon, Rollins asserts that the State made no attempt to acquire the signs until a year after it acquired the site and after Rollins refused the State's offer for the I–70 signs. Additionally, Rollins contends that it had an agreement with the State that the I–70 signs were to be removed before the lease for the subject signs could be renewed.

The State countered this testimony through Edison Beachy, Right of Way Agent for the State Highway Administration. Beachy testified that the signs are behind the right of way line of a through highway where neither vehicular or pedestrian traffic is permitted and access to the signs is not available other than by crossing the right of way line of the through highway. He added that the signs are within 660 feet of I–70 which is in violation of the Highway Beautification Act.[1] For these reasons, according to Beachy, acquisition by the State was a necessity.

The "gentleman's agreement" concerning extension of the lease was between William Watts on Rollins' behalf and H. Thomas Summers, acting for the State. Summers acknowledged that he was willing to extend the lease in 1980, because the proposed upgrading of the intersection at Route 85 and I–70 was not going to be constructed for five years. When Summers learned that Rollins would not remove the I–70 signs, he considered the proposed agreement to be no longer a viable alternative to condemnation. Whether the failure of the agreement between the parties triggered a retaliatory action by the State was a matter to be resolved by the trial judge, not by this court.

---

1. Md.Transp.Code Ann. § 8–740(a)(1) and § 8–743(a) (1977).

■ Judge Barrick determined that the State had demonstrated a public necessity for acquiring the signs and that the State acted in good faith in dealing with Rollins. The evidence was sufficient to warrant the conclusions reached by the court and, therefore, the judgment reached was not clearly erroneous. Md.Rule 1086; *Md. Dept. of Natural Resources v. Hirsch,* 42 Md.App. 457, 401 A.2d 491 (1979), (*rev'd* on other grounds, 288 Md. 95, 416 A.2d 10 (1980)).

### Issue 2

■ We find no error in the court's ruling allowing the State to explain to the jury the reasons for the condemnation of the signs. The court charged the jury that the necessity for the taking had already been determined and that the jury's only function was to determine the amount of just compensation. Rollins suggests that this testimony diverted the jury from its limited role of assessing just compensation, resulting in a lower amount than it otherwise may have found. We see no merit in this argument.

### Issue 3

■ The range of values presented to the jury varied from $12,250.00 to $20,000.00. The jury adopted the State's value of the signs and awarded Rollins the sum of $12,-250.00. Expert testimony was presented as to each figure, accompanied by the method of calculation. Each expert was subjected to cross-examination. The weight of the evidence is a matter for the jury to determine. *Bergeman v. State Roads Commission,* 218 Md. 137, 146 A.2d 48 (1958). We perceive no error.

### Issue 4

Article III, Section 40 of the Constitution of Maryland states:

"The General Assembly shall enact no Law authorizing private property to be taken for public use without just compensation, to be agreed upon between the parties, or

awarded by a jury, being first paid or tendered to the party entitled to such compensation...."

The Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, codified as 42 U.S.C.A., § 4601, *et seq.*, became effective January 2, 1971. Subchapter II, entitled Uniform Relocation Assistance, has as its stated purpose the adoption of a uniform policy for the fair and equitable treatment of persons displaced as a result of federal and federally assisted programs, in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole.

■ Real Property Article, Title 12, Subtitle II, Relocation and Assistance, is the present Maryland counterpart of Subchapter II of the Federal Act. By Chapter 628 of the Laws of Maryland, 1971, the Legislature, in order to acquire maximum federal funds for federally aided public projects, enacted a new subtitle governing Relocation Assistance Policies and Payments. The new Act became effective July 1, 1971, with the payment provisions retroactive to January 2, 1971. The language of the federal and state statutes is markedly similar and in the absence of Maryland case law discussing relocation assistance, we may refer to the federal cases for guidance.

Rollins contends that it is entitled to relocation assistance under Real Property Article § 12–205 which provides:

§ 12–205. Moving and relocation expenses.

(a) *Generally.*—If the acquisition of land for a program or project undertaken by a public or private agency will result in the displacement of any person, the public or private agency shall make a payment to the displaced person, on proper application as approved by the public or private agency, for:

(1) Actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

(2) Actual direct loss of tangible personal property as a result of moving or discontinuing a business or farm operation, but not exceeding an amount equal to the reasonable expenses that would have been required to relocate the personal property, as determined by the agency; and

(3) Actual reasonable expenses in searching for a replacement business or farm.

The State, conversely, relies on Section 12–208 which states in pertinent part:

(a) *Interest to be acquired.*—Notwithstanding any other provision of law, if a public agency acquires any interest in land, the public agency shall acquire at least an equal interest in all buildings, structures, or other improvements, located on the land acquired which it requires to be removed from the land or which it determines will be adversely affected by the use to which the land will be put.

Subsection (b) relates to compensation to be paid to the owner of any structure,[2] notwithstanding the obligation or right of a tenant, as against the owner of any other interest in the land, to remove the structure. The price to be paid is the fair market value which the structure contributes to the value of the land, or the fair market value of the structure for removal from the land, whichever is greater.

Subsection 12–208(b)(2) states:

(2) Payment under this subsection may not result in duplication of any payments otherwise authorized by law. No payment may be made unless the owner of the land involved disclaims all interest in the improvements of the tenant. In consideration for any payment, the tenant shall assign, transfer, and release to the public agency all his right, title, and interest in and to the improvements. Nothing in this subsection may be construed to deprive

---

**2.** The parties concede that billboards are a "structure" within the meaning of § 12–208.

the tenant of any rights to reject payment under this subsection and to obtain payment for the property interests in accordance with applicable law, other than this subsection.

 The State contends that the prohibition under 12–208(b)(2) relating to duplication of payments precludes Rollins from obtaining moving and relocation assistance. We construe the proscription of duplication of payments as relating to payments made to a landlord and to a tenant where each has an interest in either the land or the structures or improvements thereon. Section 12–208, in our view, has nothing to do with relocation and moving expenses. *See Will-Tex Plastics Mfg., Inc. v. Dept. of Housing and Urban Development*, 346 F.Supp. 654 (D.C.Pa.), *affirmed* 478 F.2d 1399 (3d Cir.1973).

Additionally, the State argues that Rollins, by accepting the fair market value of the sign, is precluded from seeking relocation assistance in any form. Relying upon the last sentence in 12–208(b)(2) which authorizes a tenant to reject payment of fair market value and obtain payment under other applicable law, the State asserts that Rollins had an option to receive relocation assistance or fair market value. Having opted for the latter, according to the State, Rollins is now precluded from seeking any supplementary relief. We disagree.

The State cites as its authority for the optional payment, footnote 55 in *Whitman v. State Highway Commission of Missouri*, 400 F.Supp. 1050 (W.D.Mo.1975). In *Whitman,* the condemning agency obtained title to certain real estate without assigning any separate value to twenty-four outdoor advertising signs owned by the Whitmans which were in place by lease from the owners of the property being condemned for road construction. The signs were allegedly in violation of a Missouri permit law. Ultimately the condemnor was required to acquire twenty-two of the signs and to pay relocation expenses for the two remaining signs

where the condemnation took place prior to January 2, 1971, the effective date of the Federal Act.

The State relies on the following footnote in *Whitman:* "In this context it is worth note that should the owner of the building, structure, or improvement located on real property acquired for a federal or federal-aid project desire to obtain relocation assistance for such structure, as opposed to requiring the acquiring agency to purchase the structure under Sec. 302 of the URA, he may do so. In pertinent part, Sec. 302(b)(2) of the URA provides: 'Nothing in this subsection shall be construed to deprive the tenant of any rights to reject payment under this subsection and to obtain payment for such property interests in accordance with applicable law, other than this subsection.' Apparently, then, a tenant should he desire to do so, may request payment under the relocation assistance provisions of the URA rather than under the real property acquisition sections."

We point out that the dicta in the *Whitman* decision relating to an optional method of payment was contrasting payments under URA with payments under Sec. 505(a) of Title 23 of the United States Code which said:

"Upon application approved by the State agency, a person displaced by any highway project approved under section 106 or section 117 of this title may elect to receive actual reasonable expenses in moving himself, his family, his business, or his farm operation, including personal property."

Sections 501 through 512 of Title 32 of the U.S.C. were repealed by the adoption of 42 U.S.C.S. Section 4601, *et seq.* Thus, the election referred to in *Whitman* was not specifically carried over in the Title 42 legislation and, in fact, the repeal preceded the *Whitman* decision. If an election survives, therefore, it must be gleaned from the legislative intent expressed in 12–205 and 12–208 which are substantially the same as Sec. 4622 and Sec. 4652 of the Federal Act, rather than from the footnote in *Whitman.* We do not

interpret the right to reject payment under 12–208 and obtain payment under other applicable law to be an election between a condemnation award and relocation expenses. Pursuing "other applicable law" may include a right of a tenant against the landlord under the terms of the lease or other contractual agreement.

We concede that the election available to a displaced person may exist where the property owner retains title and desires to remove the structure being condemned rather than transfer title and receive the fair market value therefor. Such an election, however, does not foreclose the displaced person from seeking reimbursement for expenses incurred pursuant to Sec. 12–205(a).

The legislative history of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 makes clear that the Congress of the United States recognized the plight of persons who are displaced or have their property taken by the ever increasing impact of federally assisted programs which have evolved to meet the needs of an increasingly urban population. The purpose of the Act of 1970, therefore, was to establish a uniform policy for the fair and equitable treatment of those private citizens who must yield their property interests for the benefit of the public.

Additionally, the Congress acknowledged:

"[a]s the thrust of Federal and federally assisted programs have shifted from rural to urban situations, it became increasingly apparent that the application of traditional concepts of valuation and eminent domain resulted in inequitable treatment for large numbers of people displaced by public action."

H.R.Rep. No. 1656, 91st Cong., 2nd Sess. ——, *reprinted in* 1970 U.S.Code Cong. & Ad.News 5850, 5851.

Contrary to the State's assertion, that having been paid for the signs through condemnation Rollins is foreclosed from any other assistance, we believe that the expenses incurred under 12–205, if proved, are payable to a displaced

person irrespective of the right to receive an award by condemnation under 12–208. Clearly, one who is paid for a structure and who transfers title to the condemnor cannot obtain compensation for relocating the structure. The intent of 12–205(a), however, is to provide reimbursement for expenses actually incurred in (1) moving, (2) direct loss of personal property, and (3) expenses in searching for another location. This is not duplication of payments. As we see it, Rollins may have been able to claim expenses under (3) "searching for a replacement business" or location.

For example, a farm is condemned for road improvement and fair market value is paid to the owner. If the farmer incurs expenses in moving his machinery from the property he is entitled to reimbursement for moving expenses under 12–205(a)(1). If he loses a crop in a silo, he may be reimbursed for a direct loss of personal property under 12–205(a)(2). If he must look elsewhere in the area for another farm, his expenses incident thereto are compensable. Under the State's theory, once the farm is bought nothing else is owed. Such a construction would render relocation expenses a nullity. Neither Congress nor the Legislature intended such a result. By definition, furthermore, a "displaced person" includes both owners and tenants.

■ We conclude that 12–205 applies to reimbursement for actual expenses incurred that are not reflected in payment of fair market value of property acquired by condemnation. We stress that payment is limited to *actual expenses incurred* and is available only upon proper application as approved by the condemning agency. Such payment is, we repeat, not a duplication of an award resulting from a condemnation proceeding.

■ In *Division of Administration, State Dept. of Transportation v. Grant Motor Company,* 345 So.2d 843 (Fla.1977) the Court said:

"The purpose of statutorily authorized payments for actual moving expenses for displaced persons and for busi-

ness relocation costs is to supplement traditional eminent domain compensation, not to create an additional element of full compensation."

We agree.

Although we recognize that relocation expenses may be payable in a proper case, we hold that the denial of expenses sought by Rollins was proper, but for a different reason than that stated by the trial court. Under Real Property Article § 12–201 "Displaced Person" means any person who moves from land, or moves his personal property from land, as a result of partial acquisition of the land. Rollins does not allege that it has moved or that it at any time has removed any personal property from the premises. Rollins, since the expiration of its lease, is still in possession of the premises with its personal property located thereon. It is not, therefore, a "displaced person" as defined in § 12–201. *See Will-Tex Plastics Mfg., supra.*

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.