REGIONAL TRANSPORTATION
DISTRICT, Plaintiff–
Appellee,

v.

OUTDOOR SYSTEMS, INC.,
Defendant–Appellant.

No. 98CA0674.

Colorado Court of Appeals,
Div. I.

Dec. 23, 1999.

Certiorari Granted Nov. 20, 2000.

Marla L. Lien, Denver, Colorado, for Plaintiff–Appellee.

Davis, Graham & Stubbs, LLP, Richard P. Holme, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Outdoor Systems, Inc., appeals the declaratory judgment entered in favor of plaintiff, Regional Transportation District (RTD). We reverse and remand for further proceedings.

RTD is a political subdivision of the state of Colorado with the power of eminent domain to acquire real and personal property. In 1991, pursuant to approval by the Federal Transit Administration, RTD undertook a series of studies of transportation alternatives in the area along South Santa Fe Drive from I–25 in Denver to Mineral Avenue in Littleton (the project). In March, 1992, the Federal Transit Administration granted RTD $1.4 million in assistance in financing studies of what RTD had designated as its "priority corridor for the next transit investment." Ultimately, RTD received a total of $7.08 million from the Federal Transit Administration for these studies.

In its initial 1992 application for these funds, RTD incorporated a prior assurance it had given in 1989 to the federal government that it would comply with the requirements of the Uniform Relocation Assistance and Real Property Policies Act of 1970. 42 U.S.C. §§ 4601, et seq., (1995), as enacted in essentially identical form in Colorado as §§ 24–56–101, et seq., C.R.S.1999 (collectively, the Acts). The Acts govern the way that governments may acquire property and provide, in pertinent part, that, if real property is being acquired for a project for which federal funds will be available to pay part of the costs, the acquiring entity must also acquire an equal interest in all structures or other improvements located on the real property. *See* 42 U.S.C. § 4652(a) (1995); § 24–56–118, C.R.S.1999.

In October 1992, RTD entered into an option to purchase a railroad right-of-way and exercised that option for $7.5 million on March 31, 1993. This purchase included an assignment of the railroad's lessor's interest in several billboard leases on the property. The leases provided that they could be terminated without cause on 30 days' written notice.

Before completing the purchase, RTD sought assurance from the Federal Transit Administration that RTD could claim that purchase expenditure as part of RTD's local required matching funds toward any later federal grant involving that real property. The Federal Transit Administration gave the requested assurance, but only under several specific conditions, including: "Federal Transit Administration will require that recently-acquired property have been acquired in accordance with Federal real property acquisition and relocation policies to avoid the appearance that federal law is being circumvented."

In January 1996, RTD submitted a Federal Full Funding Grant Application to the Federal Transit Administration seeking federal funding for project construction, and stated in that application:

> Prior RTD expenditures which are included in the calculation of RTD's contribution to the Project are as follows: Right-of-Way Acquisition—$7,500,000.00.
>
> . . . .
>
> All right-of-way acquisition and relocation will be undertaken in accordance with the Uniform Relocation Assistance and Real Property Policies Act of 1970 (P.L. 91–646)

and regulations issued by the U.S. Department of Transportation thereunder.

RTD's grant application was approved for $120 million on May 9, 1996; the grant included, as RTD's contribution to the project, credit for the $7,500,000 purchase price of the right-of-way acquisition.

On May 28, 1996, RTD gave notice to defendant's predecessor that the billboards had to be removed. RTD at no time offered, pursuant to the Acts, to purchase an ownership interest in the billboards. Defendant's predecessor refused to vacate.

RTD then filed a complaint for declaratory judgment, asking for the removal of the billboards without the payment of any compensation, and obtained an injunction requiring removal of the billboards. Defendant also sought a declaratory judgment, arguing that RTD had to compensate it for removal of the billboards. The parties stipulated, and the trial court ordered, that the issues of liability and damages would be bifurcated.

On March 2, 1998, after full briefing and on stipulated facts, the trial court entered declaratory judgment in favor of RTD. It reasoned that, because RTD had acquired the lessor's interest in the billboard license agreements, it did acquire an "equal interest in all ... structures, or other improvements" in conformity with 42 U.S.C. § 4652(a) and § 24–56–118(1). Thus, it held, RTD did not have to pay compensation to defendant for the billboards.

## I.

Defendant argues the trial court misapplied the pertinent law by holding that, because RTD had acquired only the leases and not the billboard structures themselves, defendant is not entitled to compensation for the billboards. We agree.

■ The Acts authorize grant relocation assistance for the purpose of minimizing hardship incurred from involuntary dislocation of homeowners, tenants, and businesses in addition to payments required under eminent domain. *See Auraria Businessmen Against Confiscation, Inc. v. Denver Urban Renewal Authority*, 183 Colo. 441, 517 P.2d 845 (1974). Under traditional concepts of eminent domain, a homeowner would receive the market value of his or her condemned home. In contrast, a tenant, residing or doing business at the condemned premises, would receive nothing. The Acts were intended to change these eminent domain concepts to alleviate the disproportionality of injuries suffered by those displaced by federally funded programs. *Norfolk Redevelopment & Housing Authority v. Chesapeake & Potomac Telephone Co.*, 464 U.S. 30, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983).

### A.

■ Section 24–56–118(1), C.R.S.1999, requires an agency to acquire an equal interest in "buildings, structures, or other improvements" on the purchased property. The Acts do not define the terms "buildings, structures, or other improvements," and Colorado courts have not interpreted these terms in this statute previously.

However, the majority of other courts considering the issue have included billboards within the meaning of "structures" for purposes of the application of the federal act and other, identical, state relocation acts. *See United States v. 40.00 Acres of Land*, 427 F.Supp. 434 (W.D.Mo.1976) (the owner of an outdoor advertising sign must be compensated if the property is acquired for a federal or federally-assisted project); *Whitman v. State Highway Commission*, 400 F.Supp. 1050 (W.D.Mo.1975); (outdoor advertising signboards are "structures" or "improvements" within the meaning of the URA); *Barnhart v. Brinegar*, 362 F.Supp. 464 (W.D.Mo.1973). *City of Scottsdale v. Eller Outdoor Advertising Co.*, 119 Ariz. 86, 579 P.2d 590 (Ariz.Ct. App.1978); *Department of Transportation v. Heathrow Land & Development Corp.*, 579 So.2d 183 (Fla.Dist.Ct.App.1991); *Lamar Corp. v. State Highway Commission*, 684 So.2d 601 (Miss.1996); *Rollins Outdoor Advertising, Inc. v. State Roads Commission*, 60 Md.App. 195, 481 A.2d 1149 (Md.App. 1984); *State ex rel. State Highway Commission v. Volk*, 611 S.W.2d 255 (Mo.App.1980); *State v. 3M National Advertising Co.*, 139 N.H. 360, 653 A.2d 1092 (1995); *Lamar Corp. v. City of Richmond*, 241 Va. 346, 402

S.E.2d 31 (1991). We elect to follow this majority rule and hold that the billboards here are "structures or other improvements" for purposes of the Acts.

### B.

We reject RTD's argument that defendant is not entitled to compensation under the Acts because, under the terms of the leases it acquired, RTD had the right to cancel the leases and require removal of the billboards with 30 days notice.

The Acts expressly include tenants within the definition of "displaced persons." Section 24–56–102(2)(a), C.R.S.1999; 42 U.S.C. § 4601(6)(A)(I)(II) (1995). Further, in determining the compensation to be paid, a structure is considered to be a part of the real property "notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure, or improvement at the expiration of his term." Section 24–56–118(2)(a), C.R.S.1999; *see United States v. 40.00 Acres of Land, supra*; 42 U.S.C. § 4652(b)(1) (1995).

Thus, because the billboards are structures, and the terms of the billboard leases contain no provision which would alter the general rule of compensation under the Acts, RTD is obligated to provide compensation to defendant.

### C.

■ RTD argues that, because federal funding was not awarded for the construction phase of the project until after the purchase of the right-of-way, the Acts should not apply. We disagree.

■ When the language of a statute is clear and unambiguous, it must be applied as written. *Bestway Concrete v. Industrial Claim Appeals Office*, 984 P.2d 680 (Colo. App.1999).

Section 24–56–118(1), C.R.S.1999, and 42 U.S.C. § 4652(a) require compensation "[w]here any interest in real property is acquired for a program or project for which federal assistance *will be available* ...." (emphasis added)

Another division of this court previously construed similar language in § 24–56–116, C.R.S.1999, and held that it was not determinative for purposes of a damages award that federal funding had not been actually awarded for construction at the time of the actual damage. *Grynberg v. City of Northglenn*, 829 P.2d 473 (Colo.App.1991), *rev'd on other grounds*, 846 P.2d 175 (Colo.1993); *see also Hayden v. Board of County Commissioners*, 41 Colo.App. 102, 580 P.2d 830 (1978).

We hold that the language of the Acts does not require that federal funds for construction have been awarded at the time of the damage in order for the Acts to apply.

Here, RTD received $1.4 million in federal funds almost a year before it acquired the right-of-way. In its initial application for funds, RTD had assured the Federal Transit Administration that it would comply with the Acts as a condition of receiving these funds, and the Federal Transit Administration had granted these funds on condition RTD do so.

RTD's additional applications and acceptances of other funds were all conditioned on identical assurances. And, RTD was allowed to credit the $7.5 million it had paid for the right-of-way toward its required matching funds for project construction.

Under these circumstances, we conclude the Acts applied.

### II.

Defendant contends RTD must pay compensation pursuant to the Fifth Amendment to the United States Constitution and article II, § 15 of the Colorado Constitution (the takings clauses). Because we hold that defendant is entitled to compensation under the Acts, we need not address this assertion.

■ Further, we decline to address RTD's remaining argument that the underlying leases were voided by being assigned without RTD's permission. RTD failed to raise this argument in the trial court, and therefore, we will not address it. *See Kourlis v. District Court*, 930 P.2d 1329 (Colo.1997).

The judgment is reversed and the cause is remanded with directions to conduct a trial on damages.

Judge CRISWELL and Judge DAVIDSON concur.