# The Lamar Corporation, et al.

## v.

# City of Richmond

Record No. 900948

March 1, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Cochran, Retired Justice

*Sandy T. Tucker (George W. Marget, III; Williams, Mullen, Christian & Dobbins*, on briefs), for appellants.

*Michael L. Sarahan, Assistant City Attorney (G. Timothy Oksman, City Attorney*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

The primary issue we must decide on this appeal is whether a lessee, who erects a billboard on the property he leases, has an interest in either the billboard or the underlying property which entitles him to a separate condemnation proceeding to ascertain just compensation when the underlying leasehold property is condemned.

John D. Williams and William K. Norman, Jr., owned certain property located in the City of Richmond just south of the Maury Street interchange bordering the Richmond-Petersburg Turnpike. By lease dated March 1, 1985, Williams and Norman leased a portion of the property to the Lamar Corporation, and on May 6, 1987, they leased the remaining portion to Whiteco Metrocom, Inc., for the purpose of erecting outdoor advertising structures on the sites. The leases provided that Lamar and Whiteco would be the exclusive owners of the structures and could remove them before or at the termination of the lease.

In conjunction with the James River Floodwall Project, a joint undertaking with the federal government, the City instituted condemnation proceedings on a portion of the above property in February 1989. On February 21, 1989, the trial court entered an order vesting fee simple title to the property in the City. Thereafter, the City provided Lamar and Whiteco relocation notices as required under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. §§ 4601, *et seq.* (1970) (the Act), which was applicable to the project. The City informed Lamar and Whiteco that it would pay actual relocation expenses for the billboards, or $8,920 in lieu of such expenses.

In addition to corresponding with the City regarding the fate of the billboards, Lamar and Whiteco sought a zoning variance to allow relocation of the signs to a portion of the leased property which was not included in the condemnation. On December 6, 1989, the board of zoning appeals denied Lamar's application and, in light of this determination, Whiteco ceased pursuing its request.

In December 1989, with the billboard matter still unresolved, the City filed a motion requesting the trial court to authorize removal of the billboards. Lamar and Whiteco appeared specially at a December 20 hearing and requested that the court compel the City to acquire their property interests by eminent domain procedures in compliance with § 18.03 of the City Charter. The City

suggested that Lamar and Whiteco intervene in the proceedings, but Lamar and Whiteco refused to do so, insisting that the City initiate a separate condemnation proceeding for their benefit. Lamar and Whiteco, who were represented by the same counsel who represented the landowners, persisted in this refusal until after their counsel had endorsed a consent order, entered December 27, 1989, in which the owners agreed with the City that $360,000 would be a just compensation for "all right, title and interest in the property and property rights acquired herein, to include damages, if any." This order provided that the entire award "shall be paid to and owned by Williams and Norman to the exclusion of all others . . . ." The order was endorsed "We ask for this" by counsel for Williams, Norman, Lamar, and Whiteco. The endorsement for Lamar and Whiteco is followed by the words "(special appearance)."

On January 16, 1990, the court entered an order allowing the City to remove the billboards. That same day, although they had declined to intervene at the December 20, 1989 hearing, Lamar and Whiteco filed a motion seeking leave to intervene, and requesting the appointment of commissioners to determine just compensation for the billboards and their leasehold interests. The court denied the motion on April 11, 1990 holding that neither Lamar nor Whiteco had a condemnable interest and that they were entitled only to relocation expenses under the Act.

On appeal, Lamar and Whiteco assert that, under Virginia law, they have condemnable interests in the advertising structures themselves, and in the underlying leasehold property, and that these interests have been taken without just compensation and without due process of law.

## I. THE LEASEHOLDS

Lamar and Whiteco contend that the leases they executed with Williams and Norman created interests in the underlying real property which are condemnable interests entitling them to due process and just compensation.

In this case, the City, acting pursuant to § 18.03 of the City Charter, acquired fee simple title to the property upon the filing of the condemnation petition and the deposit of the requisite funds with the court. At that point, all interests in the condemned property are transferred to the deposited fund. *See May v. Dewey*, 201 Va. 621, 633, 112 S.E.2d 838, 847 (1960) (citing *Stanpark*

*Realty Corp.* v. *City of Norfolk,* 199 Va. 716, 101 S.E.2d 527 (1958)); Code § 25-46.28. Thereafter, the court distributes the fund " 'as to it may seem right, having due regard to the interest of all persons therein, whether such interest be vested, contingent or otherwise . . . .' " *May,* 201 Va. at 631, 112 S.E.2d at 846 (quoting former Code § 25-26). Where, as here, the condemned property is subject to a lease, the lessee is not a proper party to the condemnation proceeding but rather "the proper course is to ascertain the entire compensation as though the property belonged to one person, and then apportion this sum among the different parties according to their respective rights." *Fonticello Mineral Springs Co.* v. *City of Richmond,* 147 Va. 355, 369, 137 S.E. 458, 463 (1927) (citation omitted).

 Although a lessee, in condemnation proceedings, may suffer a taking of, or damage to, his leasehold, for which he is entitled to compensation from the condemnation award, neither our prior decisions nor the authorities Lamar and Whiteco cite support their contention that a lessee has a separate, condemnable interest entitling him to a separate condemnation proceeding.

Nevertheless, Lamar and Whiteco respond that the condemnation proceeding itself was invalid because they, as "tenants of the freehold," were not given notice as required by § 18.03 of the City Charter. Therefore, they contend, the City was not vested with fee simple title in the property and their interests were not transferred to the award. This argument assumes Lamar and Whiteco were "tenants of the freehold."

 We have defined "tenant of the freehold" as a tenant in possession appearing as the visible owner. *Fonticello,* 147 Va. at 369, 137 S.E. at 462. We agree with the trial court that Lamar and Whiteco were not "tenants of the freehold" because the mere presence of their outdoor advertising displays did not suggest that these billboard companies owned the premises. Therefore, we find that the condemnation proceeding under Richmond City Charter § 18.03 was not defective and that the City was properly vested with fee simple title to the property on February 21, 1989, thus transferring all interests including Lamar's and Whiteco's to the condemnation award.

## II. *THE BILLBOARDS*

Next, Lamar and Whiteco assert that they have a separate, condemnable interest in the billboards because the billboards are realty.[1]

In a dispute between a condemnor and the owner of the fee, we have developed a three-part test to determine whether structures annexed by the owner are personalty or realty. That test examines (1) the degree of permanency with which the chattels are annexed to the realty, (2) the adaptation of the chattels to the use or purpose to which the realty is devoted, and (3) the intention of the owner of the chattels to make them a permanent accession to the freehold. *State Highway and Transp. Comm'r. v. Edwards Co.,* 220 Va. 90, 96, 255 S.E.2d 500, 504 (1979); *Danville Holding Corp. v. Clement,* 178 Va. 223, 238, 16 S.E.2d 345, 351 (1941). Of these three factors, the third—the intention of the party making the annexation—is paramount. *Danville,* 178 Va. at 232, 16 S.E.2d at 349.

The foregoing test, however, is not applied to a dispute between the condemnor and a lessee of the fee when the lessee's structures are annexed to land taken under the power of eminent domain. Under the modern law of fixtures and the terms of the leases here, structures attached by the lessee to the real estate may be removed by the lessee at any time during the term, provided such removal can be made without injury to the freehold. 2 J. Sackman, Nichols' The Law of Eminent Domain § 5.47, p. 5-506 (rev. 3d ed. 1989). To apply the three-prong test set out above would, therefore, inevitably result in a finding that the lessee's structures were personalty precluding their inclusion in the condemnation award and precluding any compensation to the lessee therefrom even though the structures were acquired or damaged by the condemnation. Therefore, we have adopted the general rule that, as between the condemnor and lessee, structures attached to the condemned real estate but owned by the lessee are realty. This is the case even though, as between the landlord and lessee, the structures may be personalty. *Foodtown, Inc. v. Highway Com-*

---

[1] The floodwall project is subject to the provisions of the federal Act and its virtually identical Virginia counterpart, Va. Code § 25-235, *et seq.* Under these statutes, Virginia's law of fixtures is determinative of whether the billboards constitute personalty or realty. *See* 42 U.S.C. §§ 4601(7)(D); 4622(a)(1) - (3); 4652(a), (b)(1), 54 Fed. Reg. 8,920 (1989).

*missioner*, 213 Va. 760, 763-64, 195 S.E.2d 883, 886 (1973); 2 J. Sackman, *supra*.

█ The value of the structures is included in the total award made for the freehold, even though the lessee has, by the terms of his lease, expressly reserved the right to remove them during or at the end of his term. Title to the structures passes to the condemnor as an incident of the entire taking. *Id.* The lessee becomes entitled to a share of the total award and to a subsequent proceeding to determine the appropriate amount of that share.[2] *Foodtown*, 213 Va. at 764, 195 S.E.2d at 886.

█ The billboards in question here were supported by steel poles, three feet and five feet in diameter, respectively. The supporting poles were encased in concrete slabs, six feet square at the surface and extending underground over thirteen feet. They were, therefore, so attached to the realty as to be a part of it, insofar as the condemnor was concerned. Thus, title to them passed to the City when it acquired fee simple title to the land, and Lamar and Whiteco simultaneously acquired an interest in the award.

█ In this case, Lamar and Whiteco had full notice of the condemnation. Furthermore, they asked for and consented to the order entered December 27, 1989, fixing the quantum of the award and directing its disbursement to the landowners. By the terms of the order, that award constituted "just compensation for all right, title and interest acquired" by the City, which, for reasons stated above, included Lamar's and Whiteco's billboards and leasehold interests.

Accordingly, for the reasons expressed in this opinion, we will affirm the decision of the trial court.

*Affirmed.*

---

[2] At the subsequent proceeding, the structures may be classified as realty or personalty as between the lessor and lessee based on the three-prong test set out in *Danville Holding Corp.* v. *Clement*, 178 Va. 223, 16 S.E.2d 345 (1941).