Present:  All the Justices

THE LAMAR CORPORATION

v.  Record No. 002415    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        September 14, 2001
COMMONWEALTH TRANSPORTATION
COMMISSIONER OF VIRGINIA, ET AL.

                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                          George F. Tidey, Judge


     In this appeal, we consider the extent to which a lessee

may participate in condemnation proceedings when the lessee owns

a billboard affixed to its leased portion of the condemned

property.

     L. F. Loree, III, and Norwood H. Davis, Jr., co-trustees

under the Goodwin Children's Trust Agreement (collectively, the

landowners), own a parcel of land located near the intersection

of Route 250 and Three Chopt Road in Henrico County.  Since

1983, the landowners have leased a portion of the property to

the Lamar Corporation, or its predecessors, to permit the

installation and maintenance of a "back-to-back," four-panel

billboard.  Lamar, in turn, has engaged in the business of

renting space and installing advertising on the billboard.

     In September 1995, the Commonwealth Transportation

Commissioner (the Commonwealth) recorded a certificate

condemning a portion of the landowners' property for

construction of improvements to Route 250.  The condemned

property included the portion of the landowners' property leased to Lamar.

At the time of the condemnation, the lease in effect between the landowners and Lamar provided for a term of five years beginning in August 1992. The lease stated that it "shall continue from year to year unless either party shall give the other party written notice of nonrenewal at least 60 days prior to the expiration of the then-current term."

The lease provided ownership rights to Lamar in all structures Lamar placed on the premises with the right to remove any structures within 30 days after the expiration of the lease term or any extension. The parties agree that under the lease terms, Lamar owns the billboard. The lease also provided that "[I]n the event of condemnation of the subject premises[,] . . . [a]ny condemnation award for [Lamar's] property shall accrue to [Lamar]."

In April 1998, the Commonwealth filed a petition in the trial court, requesting that commissioners be appointed to determine the value of the land taken and any damage that may accrue to the residue as a result of the taking. Lamar filed a petition to intervene in the first stage of the condemnation proceedings (the valuation proceeding) as an " 'owner' of the structure acquired by the Commonwealth," and as a "'tenant' of the land acquired."

2

The Commonwealth moved the trial court to dismiss Lamar's petition or, in the alternative, to restrict Lamar's participation in the valuation proceeding to that of a "tenant" to the extent authorized by Code § 25-46.21:1. That statute provides, in relevant part:

> Any tenant under a lease with a term of twelve months or longer may participate in the proceedings described in § 25-46.21 to the same extent as his landlord or the owner. . . . Nothing in this section shall be construed, however, as authorizing such tenant to offer any evidence in the proceedings described in § 25-46.21 concerning the value of his leasehold interest in the property involved therein or as authorizing the commissioners or jurors, as applicable, to make any such determination in formulating their report.

Lamar also filed with the trial court a list of nominees to serve as condemnation commissioners in the valuation proceeding. The landowners moved to preclude Lamar from participating in the selection of commissioners on the ground that "[t]he owner of a leasehold interest such as a billboard is not a proper party" to a valuation proceeding. After hearing argument on the motions, the trial court entered an order granting Lamar's motion to intervene in the valuation proceeding as a tenant "to the extent permitted by [Code] § 25-46.21:1," and granting the landowners' motion to preclude Lamar from nominating commissioners.

Lamar notified the Commonwealth and the landowners that it planned to present expert testimony at the valuation proceeding from Donald T. Sutte, a nationally recognized expert on the

3

subject of billboard appraisals.  Lamar indicated that it expected Sutte to testify that "just compensation in this case consists of two elements: (1) the fair market value of the land taken plus damages, if any, to the residue; and (2) the fair market value of the billboard."

The Commonwealth filed a motion in limine to exclude Sutte's testimony on the ground that it would include "evidence of the alleged economic value of Lamar's sign to Lamar."  The Commonwealth contended that such testimony would be inadmissible because it would be equivalent to evidence of Lamar's leasehold interest in the property.

The trial court entered an order granting the Commonwealth's motion.  The trial court ruled that "the only issues at this stage of the instant action are the determination of the compensation award for the fair market value of the land taken, and any damages or enhancements to the residue."  The trial court also ruled that Lamar was not entitled to "a separate valuation of its improvements."

Following the trial court's ruling, Lamar notified the landowners and the Commonwealth of its intention to present expert testimony from Sutte and Ivo H. Romenesko, a licensed commercial real estate appraiser.  The stated subject of their anticipated testimony was "the fair market value of land and improvements taken by the Commonwealth of Virginia and damages

4

to the residue of the subject property." Lamar stated that it expected both Sutte and Romenesko to testify that the fair market value of the land and improvements taken was as follows:

| | |
|---|---|
| .221 acre land taken | $129,965 |
| temporary construction easement on .104 acre land | 12,232 |
| billboard | $ 60,600 |
| TOTAL FAIR MARKET VALUE OF TAKE | $202,797 |

The Commonwealth filed a supplemental motion in limine seeking to prohibit Sutte's testimony in its entirety and any testimony from Romenesko concerning "the value of the billboard or Lamar's leasehold interest." After a hearing, the trial court excluded Sutte's proposed testimony and ruled that Romenesko could not testify regarding his $60,600 valuation of the billboard as part of the fair market value of the condemned property.

In a deposition containing Sutte's proffered testimony, Sutte was asked whether he agreed with the landowners' expert appraiser that no value should be assigned to the billboard structure. Sutte disagreed, stating that "[t]he signs contribute value to the whole property. They have a value." Sutte testified that in making his appraisal, he disregarded Lamar's lease and assumed that the land and the billboard belonged to a single owner.

5

At the beginning of the valuation proceeding, Lamar asked the trial court to clarify its ruling concerning the exclusion of Romenesko's testimony.  The trial court stated, "I'm not going to allow him to testify as to the value of the billboard. . . . Even the fair market value."  Because Romenesko's opinion of the fair market value of all property taken would have included the fair market value of the billboard, he did not testify at the valuation proceeding.

Michael McCall, a licensed commercial real estate appraiser, testified on behalf of the Commonwealth.  McCall appraised the total fair market value of the condemned property at $114,366, which included a value of $16,000 for the "sign lease."  McCall explained that this "sign lease" valuation represented the amount of rent the billboard would have been expected to generate to the landowners over a five-year period.  McCall's appraisal did not include any valuation of the billboard structure.

R. W. Tolleson, a licensed commercial real estate appraiser, testified on behalf of the landowners.  Tolleson appraised the total fair market value of the condemned property at $142,042.  Tolleson's appraisal did not include any valuation relating to the billboard because the landowners asked him "not to consider" the billboard.  In his testimony, Tolleson stated that the billboard "may have had some interim value," but added

6

that in his opinion, the billboard "was not a proper use of the site."

At the conclusion of the evidence in the valuation proceeding, Lamar renewed its motion to introduce the valuation testimony of Sutte and Romenesko. Lamar argued that its evidence was admissible to rebut McCall's valuation of the "sign lease," and as evidence that was "contrary" to both McCall's testimony and Tolleson's testimony. The trial court denied Lamar's motion.

The commissioners returned an award of $115,000 for "the value of the aforesaid land taken by [the Commonwealth] (including any easements taken)" and $35,000 for the damage to the residue. The trial court overruled Lamar's exceptions and entered judgment confirming the commissioners' award.

Under Code § 25-46.28, the matter proceeded to a hearing before the trial court (the allocation proceeding) to determine the respective shares of the competing claimants, the landowners and Lamar, in the award. Lamar presented testimony from its expert appraiser Sutte regarding his appraisal of the billboard "structure, as well as the leasehold and the site itself." Sutte determined that the "fair market value of Lamar's interests" was $60,600 based on a "sales comparison" method of valuation, or $63,000 based on an "income" method of valuation.

7

The landowners presented testimony from their expert appraiser Tolleson that the fair market value of the condemned land was $577,500 per acre. Over Lamar's objection, Tolleson testified that, based on his per-acre valuation, the annual economic rental value of the 500 square-foot portion of the condemned land that had been leased to Lamar was $794 per year. Tolleson's valuation of Lamar's interest in the condemned property did not include any valuation relating to the billboard structure.

The trial court held that Lamar's interest in the award was $6,462. In its letter opinion, which was incorporated by reference into the final judgment order, the court stated that its determination of Lamar's interest was "based on the value of the property based on the Commissioners' Award and two months of gross income."

On appeal, Lamar first argues that it qualifies as an "owner" of condemned property under the Virginia General Condemnation Act (the Act), Code §§ 25-46.1 through -46.36, and, thus, was entitled to participate in the valuation proceeding as an "owner" rather than as a "tenant." Although the Act does not define either term, Lamar emphasizes that the Act defines "[p]roperty" to include "land," which is defined as encompassing "land, lands and real estate and all rights and appurtenances thereto, together with the buildings and other improvements

thereon."  Code § 25-46.3.  Based on this terminology, Lamar contends that it was an "owner" of "property" under the Act because it owned an "improvement" on the land.  In the alternative, Lamar argues that it should have been permitted as a "tenant" to participate in the valuation proceeding under Code § 25-46.21:1 "to the same extent as . . . the owner."  Thus, Lamar asserts that as either a "tenant" or an "owner," it had the right to participate in the nomination of commissioners.  We disagree with Lamar's arguments.

We have adopted the general rule that as between a condemnor and a lessee, structures such as billboards that are affixed to land but owned by the lessee are realty.  Lamar Corp. v. City of Richmond, 241 Va. 346, 351, 402 S.E.2d 31, 34 (1991); Foodtown, Inc. v. State Highway Commissioner, 213 Va. 760, 763, 195 S.E.2d 883, 886 (1973).  The fact that the billboard is "realty," however, does not mean that the lessee is entitled to participate in a valuation proceeding to the same extent as the owner of the underlying land.  We have held that a lessee who owns a billboard affixed to condemned land does not have a "separate, condemnable interest" entitling the lessee to a separate condemnation proceeding.  Lamar, 241 Va. at 350, 402 S.E.2d at 33.  Instead, a lessee who wishes to protect his interest in condemned property is permitted under Code § 25-

46.21:1 to intervene as a "tenant" in the valuation proceeding between the condemnor and the landowner.

Neither Code § 25-46.21:1 nor any other provision in the Act entitles a "tenant" to be treated as if it were an "owner" of the underlying land.  The plain language of Code § 25-46.21:1 limits a tenant's participation to "the proceedings described in [Code] § 25-46.21."  Those proceedings all occur after commissioners have been selected and include a viewing of the condemned property, a hearing on the issues joined, the filing of exceptions to the commissioners' report, and the trial court's determination confirming or setting aside the report.

A different statute, Code § 25-46.20, governs the selection of commissioners and has no provision allowing tenants to participate in this process.  Therefore, the trial court did not err in refusing to allow Lamar to participate in the selection of commissioners because the Act restricts the right of a tenant to participate in a valuation hearing in accordance with the terms of Code §§ 25-46.21:1 and -46.21.

Lamar next argues that the trial court erred in excluding the testimony of Sutte and Romenesko from the valuation proceeding.  Lamar contends that these experts properly appraised the total value of the condemned property, including the value of the billboard, as if the property were owned by a single person and did not appraise Lamar's "leasehold interest."

10

In response, the Commonwealth argues that Lamar's proffered valuation testimony was inadmissible because Lamar's experts improperly included in their appraisal the value of the billboard, which the Commonwealth contends is equivalent to the value of Lamar's leasehold interest. The Commonwealth also contends that by taking the value of the billboard into account, Lamar's experts failed to appraise the condemned property as if it were owned by a single landowner. The Commonwealth also challenges the methodologies used by Lamar's expert Sutte to value the billboard. The Commonwealth contends that the record shows that Sutte improperly relied in his "income" method on evidence of the billboard's future business income, and that he used inappropriate sales figures in his "comparable sales" method. We disagree with the Commonwealth's arguments.

As a tenant, Lamar was entitled in the valuation proceeding to introduce its own valuation testimony under Code § 25-46.21:1, which authorizes a tenant "to offer admissible evidence concerning the value of the property being taken or damaged." Code § 25-252(a) provides that a condemnor who acquires real property also acquires "an equal interest in all buildings, structures, or other improvements located upon the real property." Code § 25-252(b) further provides:

> For the purpose of determining the just compensation
> to be paid for any building, structure or other
> improvement required to be acquired as above set

11

forth, such building, structure or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure or improvement at the expiration of his term, and the fair market value which such building, structure or improvement contributes to the fair market value of the real property to be acquired or the fair market value of such building, structure or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor.

We have recognized that a billboard affixed to condemned property is a "structure," and that the fair market value of such a structure is properly included in a total award of just compensation, even when the lessee may remove the structure under the terms of the lease. Lamar, 241 Va. at 352, 402 S.E.2d at 34; see Exxon Corp. v. M & Q Holding Corp., 221 Va. 274, 281, 269 S.E.2d 371, 376 (1980); Foodtown, 213 Va. at 763, 195 S.E.2d at 886. Thus, for purposes of determining just compensation in a valuation proceeding, Code § 25-252 mandates the inclusion of the fair market value of the billboard as determined by using one of that statute's two specified valuation approaches, whichever yields the greater valuation.

This statutory directive is consistent with our prior holdings that "the proper course is to ascertain the entire [just] compensation as though the property belonged to one person." Lamar, 241 Va. at 350, 402 S.E.2d at 33 (quoting Fonticello Mineral Springs Co. v. City of Richmond, 147 Va. 355,

12

369, 137 S.E. 458, 463 (1927)); Stanpark Realty Corp. v. City of Norfolk, 199 Va. 716, 724, 101 S.E.2d 527, 534 (1958) (quoting Fonticello, 147 Va. at 369, 137 S.E. at 463). The provisions of Code § 25-252 are also consistent with the requirement of Code § 25-46.21:1 excluding evidence concerning the value of the tenant's "leasehold interest." Under either valuation approach permitted by Code § 25-252, just compensation for the billboard is determined based on its fair market value without regard to a tenant's leasehold interest in the billboard. Moreover, compensation for the billboard structure is a component of the total award of compensation for all property taken and, thus, the ultimate effect of Code § 25-252 is to value the billboard as if it were owned by the landowners along with the underlying land.

Here, the evidence that Lamar sought to admit concerning the "fair market value of land and improvements taken" satisfied the requirements of Code § 25-252 and was improperly excluded. Sutte testified in his deposition testimony that he valued the billboard in terms of the fair market value that it "contribute[d] . . . to the whole property." He stated that in making his appraisal, he disregarded Lamar's lease and assumed that a single entity owned the land and the billboard. As evidence of the value that the billboard contributed to the total value of the property, this testimony satisfied the first

13

valuation approach set forth in Code § 25-252 and should have been admitted during the valuation proceeding.[1]

We disagree with the Commonwealth's contention that Sutte's use of "sales comparison" and "income" methods of valuation in determining the billboard's value rendered his testimony inadmissible. Sutte testified that he is one of the leading experts in the United States in the field of billboard appraisal, and that these two approaches are typical methods used to appraise the fair market value of billboard signs. The Commonwealth did not present any contrary evidence regarding the use of these methods to determine the fair market value of a billboard. Moreover, the issue whether Sutte properly applied these methods in fixing the fair market value of Lamar's billboard structure is a matter related to the weight to be given his testimony, which is not an issue before us in this appeal.

We also observe that Sutte's consideration of the income generated by the billboard was not offered in the valuation proceeding as an appraisal of the business conducted by Lamar on the property, but as a component consideration of the intrinsic

---

[1]We do not consider the second valuation approach under Code § 25-252 for determining just compensation for the billboard. Because Lamar's valuation testimony fell squarely within the first approach, and because Lamar proffered no other type of valuation testimony, we presume that the first approach produced the "greater" valuation.

nature and value of the billboard structure.  See Ryan v. Davis, 201 Va. 79, 82, 109 S.E.2d 409, 413 (1959); Anderson v. Chesapeake Ferry Co., 186 Va. 481, 495-96, 43 S.E.2d 10, 18 (1947).  Thus, his consideration of the income generated by the sign was not a violation of the general rule barring a landowner from presenting evidence of expected income from the operation of a business conducted on the condemned property.  Id.

We disagree with the Commonwealth's contention that the exclusion of Lamar's expert testimony in the valuation proceeding was rendered harmless by its admission in the allocation hearing, since the amount of the total condemnation award exceeded the amount of Lamar's claim for the billboard. The trial court's exclusion of Lamar's expert testimony at the valuation proceeding denied Lamar its right under Code § 25-46.21:1 to offer admissible evidence during the valuation proceeding concerning the value of its condemned property. Absent Lamar's evidence or any other evidence attributing value to the billboard structure, the commissioners' total determination of just compensation for the condemned property was erroneous as a matter of law, because their award did not include compensation for the fair market value of the billboard structure.

Finally, Lamar argues that the trial court erred by permitting the Commonwealth's expert appraiser, McCall, to

15

testify during the valuation proceeding about the value of the "sign lease" to the landowners. Lamar contends that McCall's testimony was inadmissible because he appraised the value of the lease to the landowners, rather than the value of the billboard affixed to the land as if it belonged to the landowner.

In response, the Commonwealth argues that McCall properly valued Lamar's lease by considering only the lease's effect on the value of the underlying fee. The Commonwealth contends that McCall's appraisal methodology was not improper because it addressed the value of the lease only to the extent that the lease provided income in rent paid to the landowners. We are not persuaded by the Commonwealth's arguments.

Just compensation is measured according to the property's fair market value and not by its peculiar value to the landowner or to any other party. See Fairfax County Park Authority v. Virginia Dept. of Transp., 247 Va. 259, 263, 440 S.E.2d 610, 612 (1994); State Highway Commissioner v. Reynolds, 206 Va. 785, 789, 146 S.E.2d 261, 264 (1966). Here, McCall's appraisal addressed the peculiar value that Lamar's lease had to the landowners. His appraisal was based on the discounted annual rent that the landowners could expect to receive under this particular lease with Lamar over the next five years until the property might be developed. Thus, the trial court erred admitting McCall's testimony because it addressed the value of

16

Lamar's particular lease and likely renewals of the lease, rather than the fair market value of the billboard structure as if it belonged to the landowners. See Lamar, 241 Va. at 350, 402 S.E.2d at 33 (quoting Fonticello, 147 Va. at 369, 137 S.E. at 463); Stanpark Realty, 199 Va. at 724, 101 S.E.2d at 534 (quoting Fonticello, 147 Va. at 369, 137 S.E. at 463).

For these reasons, we will reverse the trial court's judgment and remand the case for new proceedings in accordance with the principles expressed in this opinion.[2]

Reversed and remanded.

---

[2]Based on our holding, we do not reach Lamar's additional assignment of error regarding the trial court's instructions to the jury at the valuation hearing, or the assignments of error and cross-error addressing certain rulings of the trial court during the allocation proceeding.