Jagdev S. **BAJWA**, Plaintiff,

v.

**SUNOCO, INC.** Defendant.

No. CIV. 1:03CV1085.

United States District Court, E.D. Virginia, Alexandria Division.

May 26, 2004.

W. MacCauley Arnold, Fairfax, VA, for Plaintiff.

Michael Lockerby, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

Plaintiff Bajwa, a gas station franchisor, brought this action against Defendant Sunoco, Inc. for an alleged breach of a franchise agreement and for compensation in connection with the Commonwealth's purchase of the property. This matter comes before the Court on Defendant's Renewed Motion for Summary Judgment. The issue is whether the sale price paid by Commonwealth to Sunoco contained a "separate award" for the value of Bajwa's leasehold. The Court concludes that it did not and and will grant the Defendant's motion.

## I. Background

The Court will briefly review the facts giving rise to this case. On April 11, 2001, Bajwa and Sunoco entered into a Dealer Franchise Agreement (the "Agreement"), under which Bajwa would operate a Sunoco gas station at 5928 Richmond Highway, Alexandria, VA 22303 (the "Property"). (Def.Ex. 1.) The term of the contract extended from May 22, 2001 to May 21, 2004. (*Id.*) At all times relevant to this action, Bajwa operated the gas station in compliance with the terms of the lease.

The Agreement contained a condemnation clause. Part III, paragraph 3.06 of the Agreement provides:

a. Should Premises in whole or in part, be condemned or otherwise taken pursuant to power of eminent domain, Company may terminate this Franchise at any time thereafter upon notice to Dealer

b. Dealer shall have no claim to any portion of a condemnation award payable to Company arising from any such taking or from damages to Premises resulting therefrom however Dealer may be entitled to any separate award payable to Dealer for taking of Dealer's leasehold interest, loss of business opportunity, or goodwill.

(Def. Ex. 1 at 13.)[1]

On July 10, 2002, the Virginia Department of Transportation ("VDOT"), through its contractor, the Terra Company, Inc.,[2] notified Sunoco that the property would be "affected by the widening of the right of way" for the Woodrow Wilson Bridge. (Def. Ex. 2.) By letter of December 16, 2002, Terra offered to buy the property for $1,650,000. (Def. Ex. 3.) The letter informed Sunoco that its property was in the "fee take area" and the state's acquisition constituted a "total take of the property." (*Id.*)

On January 8, 2003, Terra notified Bajwa and Sunoco that the property was "being acquired by [VDOT]." (Def. Ex. 4.) Bajwa and Sunoco were notified to vacate the premises by April 8, 2003. (*Id.*) On

---

1. The abbreviation "Def. Ex." refers to Defendant's exhibits to the initial motion for summary judgment. The exhibits submitted with the instant motion will be referred to a "Donahue Ex.," because all of the new material are exhibits to the deposition of John Donahue, the principal owner and Vice President.

2. VDOT hired Terra "to acquire the necessary rights of way in connection with the expansion of the Woodrow Wilson Bridge." (Def. Ex. 2.)

February 3, 2003, Sunoco received a letter from Terra, stating that the property had to be vacated by April 7, 2003. (Def. Ex. 5.) Furthermore, the letter reported that the discussions regarding the property acquisitions had been "inconclusive" and that it "appeared that this matter will not be resolved in the near future." (*Id.*) Therefore, Terra declared that it would "begin the process of acquiring title through eminent domain proceedings with the court." (*Id.*) Terra stated that it would notify Sunoco when the certificate of eminent domain was filed with the court. (*Id.*)

On January 9, 2003, Sunoco notified Bajwa that it was terminating the Agreement, because of VDOT's taking of the property. (Def. Ex. at 6.) Sunoco stated that the taking would occur on April 8, 2003. (*Id.*)

On March 5, 2003, Sunoco granted the Commonwealth of Virginia an option to purchase the property for $1,750,000. (Def.Ex. 7.) The option extended for a period of one year. (*Id.*) On April 8, 2003, the Commonwealth acquired the property from Sunoco for $1,750,000. Bajwa received none of the proceeds. Bajwa's franchise terminated that same day, and Sunoco removed its signs, pumps, and gasoline from the premises.

VDOT paid Bajwa $50,000 pursuant to the Relocation Assistance Program. This program was intended to provide benefits to businesses displaced by the Woodrow Wilson Bridge project. (Donahue Dep. Ex. 8.) Plaintiff received a fixed payment of $50,000 instead of actual cost reimbursement for relocating his business. (Donahue Dep. Tr. at 33–34.)

Bajwa filed suit in Fairfax Count Circuit Court on July 25, 2003. The Defendant removed the matter to this Court on August 6, 2003. Both parties moved for summary judgment. On January 16, 2004, the Court granted in part and denied in part the Defendant's Motion for Summary Judgment. The Court held that Sunoco did not wrongfully terminate Plaintiff's franchise, because the sale of the property to the state was a "taking" within § 2802 of the PMPA and ¶ 3.06(a) of the Agreement.[3] The Court also denied Defendant's Motion for Summary Judgment in part, holding that there were outstanding issues of material fact with regards to (1) the inclusion of the value of Bajwa's leasehold interest in the sale price of the property; and (2) the value of that leasehold interest. Plaintiff's Motion for Partial Summary Judgment was denied in its entirety.

On February 19, 2004, Sunoco renewed its motion for Summary Judgment. This matter came before the Court for oral argument on March 5, 2004.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Evans v. Techs. Apps. & Serv., Co.,* 80 F.3d 954, 958–59 (4th Cir.1996) (citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.,* 933 F.2d 1253, 1259 (4th Cir.1991) (citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory al-

---

**3.** The Court also held that the sale price was the equivalent of a just compensation award by the Commonwealth. Sunoco could not invoke the benefit of the condemnation clause in the Agreement without having the sale price treated as a condemnation award. (Mem. Op. at 17.)

legations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248–52, 106 S.Ct. 2505. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248, 106 S.Ct. 2505.

### III. The Court's Opinion of January 16th

Having reviewed the submissions of the parties, there seems to be some confusion as to the Court's earlier opinion. In the January 16th opinion, the Court resolved two issues: "(A) Did Sunoco violate either the PMPA or the Agreement in terminating Bajwa's franchise; and (B) If Sunoco did not wrongfully terminate the franchise, is Bajwa owed compensation under the lease, the PMPA, or state law." (Mem. Op. at 5.) The Court held that Sunoco did not wrongfully terminate Bajwa's franchise. (*Id.* at 16.) The Court went on to hold that Bajwa may be entitled to recover a "separate award" under Virginia law and the Agreement, but there were material issues of fact as to whether the value of Bajwa's leasehold was included in the sale price to Sunoco. (*Id.* at 20.)

There are two unresolved issues in this case. (*Id.*) The first issue is whether the sale price of the property included the value of Bajwa's leasehold interest. The second is what the value of that leasehold interest would be were the Court to find that the sale price included compensation for the leasehold. (*Id.*)

Bajwa's Opposition to Sunoco's Renewed Motion for Summary Judgment reveals a number of misunderstandings of the Court's opinion. Bajwa misinterprets the Court's description of the parties' arguments as holdings: The Court did not rule that "Bajwa is entitled to compensation." (Pl. Mem. at 1.) The part of the January 16th opinion cited by Bajwa simply does not support that proposition. The Court ruled that "Bajwa, under the contract, would only be entitled to a *separate* award . . . ." (Mem. Op. at 20.) The Court also did not rule that "Bajwa did not waive his right to compensation in the event of condemnation." (Pl. Mem. at 2.). The Court only held that the agreement "specifically states that Bajwa did not waive any right to a *separate award* for the taking of the leasehold interest." (Mem. Op. at 19.) Bajwa waived any right to a portion of the general condemnation award. The Court will discuss the waiver issue in section IV:F, *infra.*

### IV. Analysis

Bajwa contends that 5 sources of law entitle him to compensation: (1) the Virginia and United States constitutions; (2) the PMPA; (3) the Virginia Condemnation Statutes; (4) the Option agreement between the Commonwealth and Sunoco; and (5) the Agreement between the parties. The Court will discuss each in turn.

### A. The Constitutions of the United States and Virginia

■ The Takings Clause of the Fifth Amendment to the United State Constitution prohibits a taking of private property for "public use, without just compensation." U.S. Const. amend. V. This prohibition equally applies to the states through the Fourteenth Amendment.[4] *Multi–*

---

4. Article I, § 11 of the Virginia Constitution provides that the General Assembly shall not pass any law . . . whereby private property shall be taken or damaged for public uses, without just compensation . . . ." Although the protection provided by Article I, § 11 of the Virginia Constitution is more expansive than that furnished by its federal counterpart—for

example, the state clause protects private property from being "taken *or damaged*," see *Bartz v. Bd. of Supervisors of Fairfax County*, 379 S.E.2d 356, 361 n. * (Va.1989) (Whiting, J. dissenting)—the Supreme Court of Virginia has "cited to and sought guidance from cases involving takings under the Fifth Amend-

*Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1123 (4th Cir.1995) (citing *Chicago Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897)). Governmental action is required to trigger the application of this clause; it does not apply to private parties who are not state or governmental actors. *See Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 307 F.Supp.2d 565, 585 (S.D.N.Y.2004); *N.Y., N.H. & H.R. Co., First Mortgage 4% Bondholders' Comm. v. United States*, 305 F.Supp. 1049, 1055 (S.D.N.Y.1969), *vacated on other grounds sub. nom.*, *New Haven Inclusion Cases*, 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970).

■ The Takings clause of the Fifth Amendment, as applied to Virginia through the Fourteenth Amendment, does not entitle Bajwa to compensation. Bajwa has not shown the required governmental action. Sunoco is a private entity; the takings clause does not provide for a cause of action against a private party. Moreover, the Option agreement between Sunoco and the state does not permit Bajwa to sue a private entity for a cause of action properly against the Commonwealth. As the Court previously held "the option does not confer upon Bajwa any substantive rights." (Mem. Op. at 20.) The indemnification clause in the option provides that Sunoco will compensate Bajwa "for his/her interests and any and all legally compensable damages said tenant(s) may suffer and sustain by reason of the conveyance." (Def. Ex. 7 at 2.) While the option agreement requires Sunoco to indemnify the Commonwealth, it does not require Sunoco to answer for constitutional claims properly brought against the Commonwealth.

## B. PMPA

■ The PMPA does not entitle Bajwa to compensation. As stated in the prior opinion, Sunoco complied with the PMPA; it properly terminated Bajwa's franchise. (*See* Mem. Op. at 16.) The PMPA does not entitle a franchisee to compensation from the owner for his leasehold in the event of a condemnation; the act only requires that "the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will." 15 U.S.C. § 2802(d)(1). Virginia law does not compensate the property owners for loss of business opportunity or good will. *See State Highway & Transp. Comm'r of Va. v. Lanier Farm, Inc.*, 233 Va. 506, 357 S.E.2d 531, 533 (1987). The sale price received by Sunoco, therefore, could not have contained compensation for business opportunity or good will. Accordingly, the PMPA does not require that Sunoco share the sale price with Bajwa. No other provision of the PMPA provides for compensation to Bajwa.

## C. Virginia Law

### 1. Condemnation Statutes

Plaintiff asserts that §§ 25.1–234, 25.1–241 of the Virginia Condemnation Act entitle Bajwa to compensation. Sections 25.1–231, 25.1–232, and 25.1–233 set forth the initial proceedings to determine "just compensation" under Virginia law. A tenant may intervene in these proceedings to determine just compensation, but may not "offer any evidence in the proceedings to determine just compensation concerning the value of his leasehold interest in the

---

ment." *City of Virginia Beach v. Bell*, 255 Va. 395, 498 S.E.2d 414, 417 (1998); *see, e.g., City of Virginia Beach v. Virginia Land Invest.*, 239 Va. 412, 389 S.E.2d 312, 314 (1990); *Commonwealth ex rel State Water Control Bd.*

*v. County Util. Corp.*, 223 Va. 534, 290 S.E.2d 867, 872 (1982). Since the taking in this case involves the condemnation of the entire property, the analyses under the Virginia and Federal constitutions are identical.

property involved." Va.Code Ann. 25.1–234(C). Section 25.1–241 sets forth the procedure for hearing the case and determining the rights and claims of all persons entitled to the fund or to any interest or share of the condemnation award. *See* Va.Code Ann. § 25.1–241. At the hearing pursuant § 25.1–241, a court would determine the value of the tenant's leasehold interest.

■ Bajwa's attempts to rely upon these provisions of the Condemnation Act rely upon a flawed premise: there are no pending condemnation or other proceedings to determine just compensation. Furthermore, Bajwa has not demonstrated how these sections entitle him to compensation. Both sections set forth the procedures that a Virginia court must follow to determine the compensation due the interested parties to an eminent domain taking. These sections do not provide the tenant any substantive rights to compensation. Section 25.1–234 permits the tenant to intervene in the proceeding to determine the value of the fee simple interest. The tenant, however, has no right to offer any evidence concerning the value of the leasehold. Va.Code Ann. § 25.1–234(C). Section 25.1–241 only requires that once the value of the fee simple interest has been determined, a court must hold another hearing to determine if the tenant is entitled to a portion of the condemnation award.[5] These section does not confer upon Bajwa any right to compensation, but merely a procedural right once a condemnation proceeding has begun. Since no condemnation proceedings have been initiated, Bajwa has no enforceable rights under these statutes.

### 2. Virginia Common Law

Bajwa argues that the sale price of the property must have included the value of his leasehold. Bajwa's argument may be summarized by the rhetorical question: "Where did the leasehold go?" Plaintiff contends that the Commonwealth purchased the entire fee simple, and, as a matter of property law, the fee simple includes the right to occupy the property. Since a tenant holds the right to occupy the property, Bajwa contends that VDOT must have purchased his leasehold, including the right to occupy. This syllogism is simple, initially compelling, but ultimately incorrect.

■ As the Court stated in its prior Opinion, under Virginia law, lessees of property are entitled to compensation for the value of their leasehold interest. *Exxon Corp. v. M & Q Holding Corp.*, 221 Va. 274, 269 S.E.2d 371 (1980); *see also Lamar Corp. v. City of Richmond*, 241 Va. 346, 402 S.E.2d 31, 34 (1991) (stating that once title to the property passes to the condemner, the lessee becomes entitled to a share of the total award and to a subsequent proceeding to determine the appropriate amount of that share). Both the landlord and the tenant have a constitutionally protected "property" interest when leased property is taken in eminent domain. *United States v. Gen. Motors Corp.*, 323 U.S. 373, 377–78, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *Kohl v. United States*, 91 U.S. 367, 377, 1 Otto 367, 23 L.Ed. 449 (1875). When the condemned property is subject to a lease, the value of the lessee's interest should first be determined and deducted from the award, and the balance then allocated to the landowner. *Exxon*, 269 S.E.2d. at 375.

---

5. This is the type of hearing that the Court envisioned would occur during the trial in this case. The Defendant, however, has

shown that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact requiring a trial.

In support of his argument, Bajwa offers testimony from the cross-examination of Donahue:

Plaintiff's Counsel: ... from your experience in the real estate industry, do you have a clear definition of what fee simple estate is?

Donahue: Yeah.

Plaintiff's Counsel: And does that include the right to occupy the property?

Donahue: Correct.

. . . . .

Plaintiff's Counsel: And a person who has a lease on a piece of property, the tenant, has the right to occupy the property; do they not?

Donahue: Yes.

Plaintiff's Counsel: All right. So, [the appraiser's] assignment was to value the property as a fee simple estate, which would include the right of occupancy; that is, the value of the lease; would it not?

Donahue: I don't think that's inconsistent. Yes.

. . . . .

Plaintiff's Counsel: have you ever bought a piece of property subject to a lease?

Donahue: Maybe in a—no. We've always—bought a fee simple interest.

(Donahue Dep. at 41–43.)

■ The flaw in Bajwa's argument is that when the Commonwealth purchased the property it was no longer subject to a lease; Sunoco had already terminated the lease pursuant to 15 U.S.C. § 2802(c)(5) and the condemnation clause in the Agreement. (*See* Def. Ex. 6.) It is well established that leases may contain clauses allowing for termination upon the condemnation of the premises. *See United States v. Petty Motor Co.*, 327 U.S. 372, 375, 66 S.Ct. 596, 90 L.Ed. 729 (1946); *Heir v. Delaware River Port Auth.*, 218 F.Supp.2d 627, 638 (D.N.J.2002) ("the right to compensation extends only as far as a party's contractual rights permit"); *Norfolk S. Ry. Co. v. American Oil Co.*, 214 Va. 194, 198 S.E.2d 607, 609 (1973) ("Of course, if the lease itself includes a provision in respect of the rights of the parties in the event of the condemnation of the leased premises, such provision is valid and controlling.") (citing 27 Am. Jur.2d, *Eminent Domain* § 250 at 22–23).

■ Once franchisees have contracted away their rights to the continuation of their franchise beyond the condemnation of the premises, they have no claim to the value of the leasehold. For example, in *Petty Motor Co.*, the United States initiated proceedings to condemn a building occupied by a number of tenants. *Id.* at 373–74, 66 S.Ct. 596. One of the leases "included a clause for its termination on the Federal Government's entry into possession of the leased property for public use."[6] *Id.* at 375, 66 S.Ct. 596. The Court held that the lessee "had contracted away any rights that it might otherwise have had." *Id.* at 376, 66 S.Ct. 596. The Court went on to state that "[w]ith this type of clause, at least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can

**6.** Specifically, the lease provided:

If the whole or any part of the demised premises shall be taken by Federal, State, county, city, or other authority for public use, or under any statute, or by right of eminent domain, then when possession shall be taken thereunder of said premises, or any part thereof, the term hereby granted and all rights of the Lessee hereunder shall immediately cease and terminate, and the Lessee shall not be entitled to any part of any award that may be made for such taking, nor to any damages therefor except that the rent shall be adjusted as of the date of such termination of the Lease.

*Petty Motor Co.*, 327 U.S. at 375 n. 4, 66 S.Ct. 596.

be entitled to nothing." *Id.; see also United States v. The Right to Use and Occupy 3.38 Acres of Land,* 484 F.2d 1140, 1144 (4th Cir.1973) (holding that a termination clause in the contract precluded the tenant from recovering the "the market rental value of the premises"); *Heir,* 218 F.Supp.2d at 639 (holding that franchisees had *no right to compensation for loss of their business* where they had contracted away their right to the continuation of their franchise beyond the condemnation of the premises); *Norfolk S. Ry. Co.,* 198 S.E.2d at 609 ("Where it appears that the lessor has given the tenant adequate notice of its intention to cancel, the lease is deemed terminated and the tenant is precluded from sharing in the lessor's condemnation award.")

In paragraph 3.06(a) Bajwa contracted away his right to the continuation of his franchise beyond the condemnation of the property. Such a clause is "expressly countenanced by [section 2802(c)(5) of the] PMPA." *Heir,* 218 F.Supp.2d at 638–39. Moreover, Plaintiff in paragraph 3.06(b) waived his right to recover any portion of the general condemnation award from the state. Bajwa could, however, recover a *separate* award for the value of his leasehold. Like the termination clause in *Petty Motor Co.,* paragraph 3.06 provides that Sunoco could terminate the franchise in the event of a taking pursuant to the power of eminent domain. (Def.Ex. 1.) A taking did occur, and as the notice of termination stated, Sunoco properly terminated the agreement between the parties on April 8, 2003.[7] (*Id.*) The Commonwealth purchased the property pursuant to the

option on the same day. As in *Petty Motor Co., Heir,* and *Norfolk S. Ry. Co.,* the Agreement between the parties, not the forced sale to the Commonwealth, terminated Bajwa's leasehold. *See The Right to Use and Occupy 3.38 Acres of Land,* 484 F.2d at 1144 (holding the contract and not the condemnation terminated the leasehold).

Having terminated the lease under the PMPA, Sunoco obtained Bajwa's right to occupy the property. As the fee simple owner, Sunoco sold its interest in the property to the Commonwealth. Bajwa agreed to paragraph 3.06, the condemnation clause, and Sunoco had every right to enforce it.[8] The Court holds that Bajwa's leasehold ended upon Sunoco's termination of the Dealer Franchise Agreement. While the sale price included the right to occupy the premises, Sunoco as the fee simple owner, having extinguished Bajwa's franchise and leasehold pursuant to paragraph 3.06(a) and 15 U.S.C. § 2802(c)(5), was entitled to its value.

Bajwa contends that the Court's ruling would allow landowners to avoid paying a portion of a condemnation award to "anyone else who had an interest in the property, such as a judgment creditor, a secured trust, or a mechanic's lien claimant." (Pl. Mem. at 8.) All of these interests are distinguishable, however, from Bajwa's rights under the Agreement, because Sunoco had the right to unilaterally terminate the franchise upon the occurrence of certain conditions. When the Commonwealth decided to obtain the property through the power of eminent domain, a condition prec-

---

7. VDOT's notice to vacate the property required that "the property must be vacated and cleared of all personal property by April 7, 2003." (Donahue Dep. Ex. 5.) The Court previously held that the sale of property to the potential condemner, where it would have otherwise obtained the property through eminent domain, constitutes an "other taking ...

pursuant to the power of eminent domain" under 15 U.S.C. § 2802(c)(5) and the Agreement between the parties.

8. Even if the Agreement was silent as to the grounds for termination, the PMPA would still apply.

edent to the termination of the Agreement occurred. Sunoco always held the right under the Agreement and the PMPA to terminate the franchise if a condemnation or "other taking" occurred. Judgment debtors, for example, may not unilaterally terminate the creditors' interests in their property. Sunoco properly terminated Bajwa's franchise and sold the fee simple interest in the property to the Commonwealth. The Court's holding does not permit landowners to avoid payments to their creditors upon a condemnation by the Commonwealth.

## D. The Option Agreement

Bajwa is incorrect that the option agreement between the Commonwealth and Sunoco entitles him to relief. The Court previously held that "the option does not confer upon Bajwa any substantive rights." (Mem. Op. at 20.) The language in the option, however, is ambiguous; prior to discovery, the Court could not determine whether the sale price included a payment for Bajwa. The Court's concern was that VDOT had earmarked or otherwise apportioned part of the sale price as compensation for the tenant. As stated above, this is not the case; the Commonwealth did not value or otherwise include a separate award in the payment to Sunoco. Since the option agreement does not confer upon Bajwa any substantive right to compensation, the Court will grant summary judgment to the Defendant on this issue.

## E. The Dealer Franchise Agreement

Although Sunoco terminated the franchise, the Agreement provided for some compensation to Bajwa in the event of a condemnation or other taking. The

Agreement between Bajwa specifically provides that Bajwa did not waive any right to a *separate*[9] award for the taking of the leasehold interest. (Mem. Op. at 19.) Previously, the Court could not determine whether the sale price included a "separate award" for Bajwa's lease. Following discovery, the answer to that question is clear: the sale price of property did not include a separate award for Bajwa's leasehold.

During discovery, Sunoco deposed VDOT's contractor responsible for condemnation of the Sunoco Property, John J. Donahue. Donahue testified that VDOT's acquisition of the Sunoco Property was performed in accordance with the state guidelines addressing the appraisal and acquisition process—including the "fair market value"—and that the components of such fair market value are land, building, and other improvements. (*See* Donahue Dep. Tr. at 12–17.) The appraisal that VDOT obtained for the Sunoco Property did not attach any value to the leasehold interest. (*See* Donahue Dep. Ex. 2.) Donahue stated that Terra did "not offer to make any payment for the value of the leasehold interest." (Donahue Dep. Tr. at 19.) He testified that the Appraisal Report did not "evaluate whether or not there was any value to the leasehold interest," (*id.* at 19), because the appraiser "was not hired to do so," (*id.* at 17). Donahue elaborated as to why the appraiser did not value the leasehold: "that's not part of the typical process that the State follows when they acquire property. They acquire the property from the landowner, the owner of the fee interest in the property." (*Id.* at 19.) The appraisal calculated

9. The Court has not found, nor has any party cited, any case defining a "separate award." Based upon the common definition of "separate" the Court interprets this phrase to mean an award set aside from or distinct from the general award paid by the Commonwealth to the fee simple owner of the property. *See* Webster's II New Riverside Dictionary 619 (Rev. ed.1996).

the $1,650,000 valuation in the following manner:

| | |
|---|---|
| Land | $1,100,000 |
| Buildings | $ 185,500 |
| Other Improvements | $ 364,500 |
| Total Property | $1,650,000 |

(*Id.* Ex. 2 at 1.) Sunoco contends that this resolves the outstanding issue of material fact and establishes that the sale price did not include a separate award for the price of Bajwa's leasehold.

■ The Court finds that there is no genuine issue of material fact on the issue of whether the sale price included a separate award for Bajwa's leasehold. Donahue's testimony establishes that the appraiser only valued the fee simple interest of the property as a whole. The appraiser did not allocate or earmark any portion of the total price of the property to the leasehold interest. The offer made to Sunoco did not attach any value for Bajwa's leasehold. Bajwa, moreover, has not offered any evidence that the appraiser attached any value to the leasehold or allocated any part of the fee simple interest to the leasehold interest.[10] Bajwa received a "separate award": the $50,000 Relocation Assistance Program payment. (Donahue Dep. at 33–34, Ex. 8.) This payment was distinct from the general award, and the Agreement protected Bajwa's right to receive this payment. The Court finds, however, that the $1,650,000 appraisal or the $1,750,000 payment did not include a *separate* award for Bajwa's leasehold.

## F. Waiver: 15 U.S.C. § 2805(f)

At oral argument, Bajwa asked to renew its argument from the prior summary judgment motion that the Agreement's waiver provision violates 15 U.S.C. § 2805(f). Section 2805(f) of the PMPA provides that "(1) No franchisor shall require, as a condition of entering into or

renewing the franchise relationship, a franchisee to release or waive—(A) any right that the franchisee has under this subchapter or other Federal law; or (B) any right that the franchisee may have under any valid and applicable State law." Bajwa contends that this section renders paragraph 3.06 of the Agreement void, because it requires Bajwa to give up his right to share in the general condemnation award under Virginia law.

■ Courts have upheld waivers of condemnation awards similar to the one in this case. It is well established that, in cases of condemnations, the landlord and tenant may modify the division of any condemnation award through their own private agreement. *See Petty Motor Co.,* 327 U.S. at 376, 66 S.Ct. 596; *The Right to Use and Occupy 3.38 Acres of Land,* 484 F.2d at 1144. Tenants may contract away any and all of their rights to compensation upon condemnation. *Petty Motor Co.,* 327 U.S. at 376, 66 S.Ct. 596. A tenant's right to compensation extends only as far as his or her contractual rights permit. *Heir,* 218 F.Supp.2d at 638; *see also* Victor P. Goldberg, et al., *Bargaining in the Shadow of Eminent Domain: Valuing and Apportioning Condemnation Awards Between Landlord and Tenant,* 34 U.C.L.A. L.Rev. 1083, 1087 (April 1987) ("[T]he tenant has a constitutionally protected property right absent language in the lease to the contrary.")

Bajwa argues that 15 U.S.C. § 2805(f) prevents franchisors from conditioning the granting or renewal of a franchise upon the agreement by the franchisee to waive a right under state law. He claims that his right to be compensated for the value of his leasehold is a right under Virginia law. Therefore, according to Bajwa, paragraph

---

10. Even if the award did include the value of the leasehold, the Court finds that such an award would not be "separate." Therefore it

would be part of the general award, which Bajwa has waived any right to.

3.06(b) is invalid, because it requires him to waive his right to be compensated from the general award for his leasehold.

Bajwa's argument misstates his "right" under Virginia law: Bajwa has a right to be compensated for the value of his leasehold interest *absent* any contractual provision to the contrary. Under Virginia law, the lessees are free to contract away their right recover in the case of a condemnation. *See Norfolk S. Ry. Co.*, 198 S.E.2d at 610 ("The lease *could have provided* for cancellation by [lessor] without liability to [lessee] in event of the property leased was taken in a condemnation or similar proceeding.") (emphasis added). Moreover, once Sunoco terminated the contract, Bajwa had no right to recover the value of his leasehold. The Court has never indicated that Bajwa was not owed any *separate* award for the value of his leasehold; however, there has been no separate award. He contracted away his right to participate in the general award.

Moreover, Bajwa has not cited any cases striking down a waiver provision like the one in paragraph 3.06. On the contrary, all of the cases found by the Court specifically enforce these provisions. In a New Jersey case, *State by Comm'r of Transp. v. Hess Realty Corp.*, the court held that although a franchisee might be entitled to participate in allocation proceedings to obtain a share of the award, the plaintiff had, as part of its agreement, contracted away any right to share in the compensation award. 226 N.J.Super. 256, 543 A.2d 1050, 1053 (N.J.Super.A.D.1988). In *Jersey City Redev. Agency v. Exxon Corp.*, another New Jersey court upheld a contractual waiver of condemnation award, stating: "Neither the PMPA nor [New Jersey law] prohibits such waivers. They are commercially common and normally enforceable." 208 N.J.Super. 53, 504 A.2d 1207, 1209–10 (1986).

■ The Court declines to hold that condemnation clauses in franchise agreements governed by the PMPA violate 15 U.S.C. § 2805(f) when the franchisee waives his right to participate in the general condemnation award. As the court in *Jersey City Redev. Agency* noted these clauses are commercially common. Furthermore, the Court agrees with the primary rationale behind condemnation clauses: the elimination of "costly strategic behavior that leaves both landlord and tenant worse off." Goldberg et al., *supra*, at 1125. The Court will not attempt to administer "after-the-fact justice" and allow Bajwa engage in strategic behavior, but will enforce the contract as agreed to by the parties. Accordingly, the Court will grant summary judgment to the Defendant.

## V. Conclusion

For the above stated reasons, the Court will grant Sunoco's Renewed Motion for Summary Judgment. An appropriate Order will issue.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Sunoco's Renewed Motion for Summary Judgment is GRANTED;

(2) the Clerk of the Court shall forward copies of this Order to all counsel of record.

This Order is final.