. 90   553
100   542
d100 544
100   625
─────
90   553
103   507

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## STRODE v. CLEMENT.

### MARCH 8th, 1894.

1. LIBEL—*Malice—Privileged communications.*—Mere publication of defamatory words is *prima facie* evidence of malice, but the occasion may rebut the presumption.   *Chaffin* v. *Lynch,* 83 Va., 106.

2. IDEM—*Justification.*—To justify publication of defamatory matter, the occasion must be privileged, and must be used *bona fide* without malice. *Ibid.*

3. IDEM—*Court—Jury.*—Whether the occasion be privileged is a question for the court.   Whether the occasion has been used *bona fide* without malice is a question of fact for the jury.   *Ibid.*

4. IDEM—*Defamation—Privileged—Case at bar.*—A letter written by one believing he has an interest in the subject matter, stating that the addressee cannot afford to go through life with a breach of trust staining his character, that his books swarm with false entries which he refuses to correct, and that if he fails to properly account and make restitution, the writer will publish the facts in a manner most unpleasant to him : *held,* a privileged communication, and the writer not liable in an action for defamation in writing the letter.

5. IDEM—*Action for defamation—Burden of proof—Case at bar.*—In such action for insults in a letter written on a privileged occasion, the burden is on the plaintiff to. prove that the letter was written maliciously, by showing that the defendant availed himself of the occasion, not for the purpose of protecting his interests, but to gratify some ill will independent of such occasion and to defame the addressee.

6. APPELLATE PRACTICE—*Inferences—Verdict.*—Where record shows no conflict in the evidence (or question as to the credibility of witnesses), this court has the same opportunity to draw correct conclusions from the facts as the trial court and the jury possessed.

Error to judgment of circuit court of Amherst county, ren-

dered October 14, 1890, in an action for insults, wherein A. H. Clement was plaintiff and H. A. Strode was defendant.

It appears from the record that on the 1st of March, 1889, the parties entered into a contract to conduct a newspaper, owned by the defendant, called the *New Era*, which contract was to continue for one year from that date, but which was afterwards modified and extended till June 30, 1890. By the modified contract the plaintiff agreed to pay the defendant ten dollars a week for his interest under the contract, the plaintiff to have " all other net money." Soon after the modification of the contract the defendant removed to the State of Mississippi, from whence he returned to Amherst county in July, 1890. Soon after his return, in looking over the books of the concern, he discovered many items of " cash received," which had been entered by the defendant, amounting in the aggregate to several hundred dollars, and which, upon inquiry, he was informed did not represent cash actually received, but that the plaintiff had closed accounts to that amount, taking notes payable to himself, and entering the transactions as so much cash received. The defendant thereupon demanded that the plaintiff surrender the notes to him, which was refused. Some of the accounts which were thus closed were due to the *New Era* before the plaintiff's connection with the paper. He however, claimed that these had been " compensated for by other accounts for subscriptions which were begun and partly earned during his connection with the paper." The defendant then employed counsel to confer with the plaintiff, but the parties not coming to any agreement, the defendant published a notice in the Lynchburg newspapers to the effect that the plaintiff had no right to the notes, and warning debtors not to pay him. About the same time he addressed to the plaintiff the letter complained of, which is as follows :

Statement.

"AMHERST C. H., VA., JULY 14, '90.

"Mr. A. H. Clement:

"Dear Sir:

"I leave home to-day for an absence of several days. I wish you seriously to consider whether you can afford to go through life with a breach-of-trust taint on your character for the imaginary benefit you may have in holding on to paper which you can never collect.

"At your request I omitted the weekly inspection of the books of the *New Era* through Mr. Scott as I at first proposed, and in return you hand me over the books in a condition which will blast you for life, as they swarm with false entries, which you refuse to correct. You are young and inexperienced, and no doubt are advised by those who care nothing for the effect upon yourself provided trouble can be given to me.

"The offer I made you was generous towards you beyond reason, and even after you had broken a second contract.

"The return for the trust I placed in your keeping is conduct which must end in the total ruin of your reputation. The further steps which will become necessary in protecting the innocent parties in this matter will necessitate publication in the Lynchburg papers most unpleasant to you, if you have any of the feelings of a sensitive man.

"I leave to Judge Brown the settlement of this matter in my absence, with recommendation of you to his mercy.

"Yours truly,

"H. A. STRODE."

At the trial the only witness examined was the plaintiff himself, and after the evidence had been closed, the court instructed the jury as follows:

"If the jury believe from the evidence that the defendant wrote the letter of July 14, 1890, for the purpose of inducing

the plaintiff to surrender the notes which he had taken payable to himself, and that the defendant honestly believed he was entitled to said notes, then the said letter is a privileged communication, and the jury must find for the defendant, unless they believe that the said letter (although privileged) contains · language which was not justified by the circumstances, and which was unnecessarily insulting, so as to amount to an abuse of the defendant's privilege to communicate with the plaintiff touching said notes, and was malicious, then the jury must find for the plaintiff, if they believe that the words contained in said letter, from their usual construction and common acceptation, are construed as insults, and tend to a breach of the peace."

To the giving of this instruction the defendant excepted.

The jury returned a verdict for the plaintiff for $900 damages, upon which the judgment complained of was entered.

*J. Thompson Brown* and *Geo. M. Cochran,* for plaintiff in error.

*Caskie & Coleman,* for defendant in error.

LEWIS, P., delivered the opinion of the court.

The question to be determined is whether the letter of the defendant to the plaintiff, upon which the action is based, is a privileged communication; and that depends (1) upon whether it was written on a privileged occasion; and if so, then (2) upon whether the occasion was used *bona fide* and without malice.

Ordinarily the law implies malice from the use of words defamatory or insulting. But the presumption is the other way where the occasion of the publication is privileged, and the *onus* is then upon the plaintiff to prove malice in fact. Where the defendant acts in performance of a duty, legal or social, or in defence of his own interests, the occasion is privileged; and since the case of *Toogood* v. *Spyring,* 1 C., M. & R., 181, was decided, it has been settled law that a communication

made by a person in the conduct of his own affairs, where his interest is concerned, is privileged, if without malice. Whether or not such an interest exists as to make the occasion privileged is a question for the court, and if the occasion be held privileged, then it is for the jury to say whether it was used *bona fide;* and if found to be so, then *the communication* is privileged, and no action can be maintained upon it.

This was well expressed by the New York Court of Appeals in *Klinck* v. *Colby*, 46 N. Y., 427, where it is said: " The court may determine whether the subject-matter to which the alleged libel relates, the interest in it of the defendant, or his relations to it, are such as to furnish the excuse. But the question of good faith, belief in the truth of the statement, and the existence of actual malice remains for the jury." And in the same case it was said that where both the party making and the party receiving the communication have an interest in it, it has never been doubted that the communication, if made without actual malice, is protected.

It has been said by an eminent English judge that the rule leaving it to the court to decide whether the requisite interest or duty exists to make the occasion privileged, is an anomaly, on the ground that that question, like the question of honesty of purpose, which belongs to the jury, is purely a question of fact. But the existence of the rule was not denied, nor can it be successfully.

In some jurisdictions when the facts are uncontroverted, the court determines whether or not the communication is privileged—*i. e.*, the case is withdrawn from the jury—but with us the practice is to submit to the jury the question of malice, where the occasion is privileged. Townsh. Sland. & L. (4th ed.), sec. 288; *Chaffin* v. *Lynch*, 83 Va., 106; S. C., 84 *Id.*, 884.

It was, therefore, error on the part of the trial court in the present case to leave to the jury the question whether the defendant had an interest in the subject matter of the communication in question; or, in the language of the instruction,

whether he "honestly believed he was entitled to the said notes"; for whether he had an interest or not, or, in other words, whether or not the occasion was privileged, was a question for the court to determine for itself; and we are unable to say that the jury were not misled by the instruction in the form in which it was given. If the defendant was not warranted in believing that he had an interest, the case was one of ordinary defamation, and the only question, apart from the question of damages, to be submitted to the jury was whether the words used were such as are usually construed as insulting and tending to violence and breach of the peace. *Chaffin* v. *Lynch, supra.*

But further than this, there was error in refusing to set aside the verdict, on the ground that it was not warranted by the evidence.

As a matter of fact, it is clear that the defendant honestly believed he had an interest in the notes, and that his object was to induce the plaintiff to surrender them. Indeed, some of the notes were taken for accounts due before the plaintiff became connected with the *New Era*, and in which; for aught the record shows, he had no interest; and although he testified that " these were compensated for by other accounts for subscriptions," in which he had an interest, yet there is no proof that he was authorized to act for the defendant in any matter originating before the contract of March, 1889. It is true he says the defendant never questioned his right to collect such accounts, but the defendant knew nothing of his taking notes to himself for any such accounts before his return from Mississippi, in July, 1890, when he promptly denied the plaintiff's right to do so.

In the next place, the letter having been written on a privileged occasion, it was incumbent on the plaintiff, according to the principles already stated, to repel the presumption that it was written without malice, by showing that the defendant availed himself of the occasion, not for the purpose of protect-

ing his interests, but to gratify some ill will independent of the occasion, and to insult the plaintiff.

Now, there is no extrinsic evidence of malice, such as an antecedent grudge, or previous disputes, or anything of that sort, between the parties; but the contention is that the language used by the defendant is of itself evidence of malice. Undoubtedly strong or violent language disproportioned to the occasion may raise an inference of malice, and thus lose the privilege that otherwise would attach to it. But when the occasion is privileged the tendency of the courts is not to submit the words to a too strict scrutiny, but rather to view them in the light of the facts as they appeared to the defendant; for the question is, not whether the imputations are true, but whether the words are such as the defendant might have honestly employed under the circumstances. Odger's Lib. and Sland., 277; *Spill* v. *Maule,* L. R., 4 Exch., 232; *S. C.,* 20 L. T., 675; *Clark* v. *Molyneux,* 3 Q. B. Div., 237.

Now, in the case at bar, the parties differed radically as to their respective rights under the contract in question. The plaintiff contended that he had a right to take notes or bonds payable to himself for all outstanding accounts, which the defendant as strenuously denied, especially as regarded accounts due before the date of the contract. Which was right, or what is the proper construction of the contract, it is not necessary to inquire, for be that as it may, under the circumstances of the case, who can say that the defendant might not have honestly written the letter in question, wherein he speaks of a " breach of trust," making " false entries," etc. ? The plaintiff admits he made entries on the books as of " cash received," when in fact no money was collected, but notes were taken in his own name; and, while he explains that, in his opinion, he had the right to do this, it is equally certain that the defendant thought differently. And so when he testified that the imputations contained in the letter were " untrue and unfounded," that was merely his own version of the matter; and, besides, if the defendant in good faith believed them to

be true, that ought to have ended the case. *Chaffin* v. *Lynch,* 84 Va., 884; *Clark* v. *Molyneux,* 3 Q. B. Div., 237.

The case of *Spill* v. *Maule,* in the Exchequer Chamber, before referred to, is much in point. There the defendant, who was interested as a creditor of a firm of which the plaintiff was a member, wrote another creditor of the firm that the plaintiff had been guilty of "most disgraceful and dishonest" conduct, which had resulted in materially diminishing the assets of the concern. In an action for libel it was held that although the language used was strong, yet the occasion was privileged, and therefore the defendant, in the absence of proof to the contrary, must be presumed to have honestly believed in the truth of what he wrote, and hence there could be no recovery. "It is not for us to say," said Lord Chief Justice Cockburn, "whether the plaintiff acted honestly or dishonestly; with propriety or disgracefully. All that we have to look to is whether or not there is a valid legal presumption that the defendant only stated that which he honestly believed; and if there be, then he would not be liable in this action, and, in the absence of positive proof to the contrary, there would be nothing to go to the jury."

Applying this test to the present case, we are of opinion that the verdict ought to have been for the defendant; that is to say, the presumption that he acted without malice is not rebutted by the evidence. We come to this conclusion with the less hesitation because here there is no conflict of evidence, or question as to the credibility of witnesses. Only one witness was examined, and from his evidence the facts of the case appear, thus affording the appellate court the same opportunity to draw correct conclusions as the trial court and the jury possessed. *Fisher* v. *Vanmeter,* 9 Leigh, 18; *Slaughter* v. *Tutt,* 12 *Id.,* 147, 160.

The judgment must, therefore, be reversed, and the case remanded for a new trial.

JUDGMENT REVERSED.