### Richmond

## RALPH E. PRESTON

v.

## CAROLE W. LAND AND REGINALD L. WATKINS

June 8, 1979.

Records Nos. 771400 and 771401.

Present: All the Justices.

*Raymond H. Strople (Moody, McMurran & Miller, Ltd.*, on brief), for appellant. (Records Nos. 771400 and 771401).

*Michael A. Inman (Holladay, Inman & Olivieri*, on brief), for appellees. (Records Nos. 771400 and 771401).

POFF, J., delivered the opinion of the Court.

Carole W. Land, now, Carole L. Watkins, and Reginald L. Watkins (plaintiffs) brought actions against Ralph E. Preston (defendant) for slander and, in a consolidated trial, obtained judgments on jury verdicts of $2,500 and $5,000, respectively. Defendant appeals and assigns error to several of the trial court's rulings, including the denial of his motion to strike plaintiffs' evidence.

Viewed in the light most favorable to plaintiffs, the evidence showed the following sequence of events. Plaintiffs, members of a private social club, attended a dance held there on the evening of March 8, 1975. Upon entering the club, Land and Watkins took seats at the bar. After ordering drinks, they left their seats to dance. Upon their return, Land found her seat occupied by defendant who was also a member of the club. She placed her hand on his arm, leaned around him, and spoke to another acquaintance. Without further provocation, defendant "whirled [her] hand off of his arm and said, 'Get your God damn hands off of me, lady, and go pick on someone your own size.'" At this point, Watkins stepped up to rebuke defendant for his unmannerly behavior and said, "If you want to talk to someone like a dog, talk to me." However, learning that defendant was a fellow lodge member, Watkins "offered [his] hand in friendship and brotherly love and apologized."

Defendant reported the incident to the club manager. Thereafter, the club's board of directors held a hearing on the matter and defendant was requested to appear. At the hearing, defendant told the board his version of the incident. He said that he had been

standing at the bar when he suddenly felt "something hit [his] shoulder" and turned to see Land. He then turned his back on her but she began "pulling and tugging" on him, so he told her "to take her hands off of me". Then, defendant said, Watkins "came a-charging up there," began to curse defendant, and pushed aside a would-be conciliator. In the course of events, defendant "finally maneuvered [his] way out of there".

Prior to this incident, defendant was a complete stranger to both plaintiffs and they to him. Thereafter until trial, the parties never saw or spoke to one another again.

Plaintiffs maintain that defendant's statements to the board falsely charged them with "socially unacceptable and rude conduct", led to their expulsion from the club's membership, and irreparably damaged their reputations in the community.

■ Instruction No. 15X told the jury that defendant's statements to the board were made under a qualified privilege* and that, in order to recover in such case, it was necessary to find they were made with malice. Plaintiffs made no objection to this instruction below and do not challenge it by assignment of cross-error on appeal. Thus, it is the law of the case that there was a qualified privilege on these facts.

Relying upon that privilege, defendant does not argue the question whether his statements were defamatory and, for purposes of this opinion, we assume that they were. *See generally, M. Rosenberg & Sons* v. *Craft,* 182 Va. 512, 518, 29 S.E.2d 375, 378 (1944). Defendant contends only that the evidence was insufficient to prove the malice necessary to defeat his privilege.

Where defamatory words are uttered under a qualified privilege, they are actionable only when the plaintiff proves they were spoken with actual malice.

> [I]n order to avoid the privilege it is necessary
> for the plaintiff to show that the words were
> spoken with *malice in fact, actual malice,*
> existing at the time the words were spoken;
> that is, that the communication was actuated
> by some sinister or corrupt motive such as

---

*For a general definition of "qualified privilege", see 50 Am. Jur. 2d, *Libel and Slander,* § 206 (1970).

hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or what, as a matter of law, is equivalent to malice, that the communication was made with such gross indifference and recklessness as to amount to a wanton or wilful disregard of the rights of the plaintiff.

*Chesapeake Ferry Co.* v. *Hudgins,* 155 Va. 874, 902, 156 S.E. 429, 439 (1931). *See also Chalkley* v. *A.C.L.R. Co.,* 150 Va 301, 143 S.E. 631 (1928).

Instruction No. 15X told the jury that defendant's words were actionable if spoken "[w]ith actual malice"; Instruction No. 3 stated that "it is not necessary for the plaintiff to prove any personal spite or ill-will [sic] on the part of the defendant". While a trained legal mind might successfully reconcile the apparent conflict in these instructions, we believe a jury of laymen could only be confused. This confusion was doubtless compounded when plaintiffs' counsel told the jury that "your instructions will show you that you need not find any actual malice on the part of Mr. Preston". It appears, therefore, that the jury's verdicts may have been based upon the conclusion that proof of actual malice was not essential to a plaintiff's verdict.

Ordinarily, the law presumes malice from the use of defamatory or insulting words. "But the presumption is the other way where the occasion of the publication is privileged, and the *onus* is then upon the plaintiff to prove malice in fact." *Strode* v. *Clement,* 90 Va. 553, 556, 19 S.E. 177, 178 (1894).

In *Rosenberg* v. *Mason,* 157 Va. 215, 249, 160 S.E. 190, 202 (1931), we explicated the nature of the plaintiff's burden:

It is not sufficient . . . that the evidence be consistent with the existence of actual malice, or even that it raise a suspicion that the defendant might have been actuated by malice or a doubt as to his good faith. It must affirmatively prove the existence of actual malice, and to do so it must be more consistent with the existence of actual malice than with its non-existence, and at least raise a probability of its existence.

■ The parties' respective versions of the altercation differ only slightly. Land admits touching and leaning around defendant; defendant insists that she pulled and tugged at him as well. Watkins admits rushing to Land's defense and issuing a challenge to defendant; defendant maintains the "challenge" was more nearly a verbal assault. We assume, as we must, that plaintiffs' version is entirely correct. But the predicate for the slander charge was not what happened but what defendant told the board. As reported in the record before us, defendant's statements and the circumstances under which they were made fail to show "such gross indifference and recklessness as to amount to a wanton or wilful disregard of the rights of the plaintiff[s]". We find no proof of "hatred, revenge, personal spite or ill will" on the part of defendant; nor is there any evidence of undue publication. At most, the testimony raises a mere suspicion of malicious design.

We hold as a matter of law that the evidence was insufficient to support a plaintiff's verdict and that the trial court erred in submitting the cases to the jury. The judgment orders entered June 3, 1977 will be reversed and final judgments for defendant will be entered here.

*Reversed and final judgments.*