PRESENT:  All the Justices

BRADLEY J. CASHION

                                           OPINION BY
v.  Record No. 121797         JUSTICE WILLIAM C. MIMS
                                  October 31, 2013
ROBERT S. SMITH, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Jonathan M. Apgar, Judge

In this appeal, we consider whether an endorsement of an order withdrew or waived issues for appeal under Code § 8.01-384(A), whether allegedly defamatory statements were non-actionable expressions of opinion or rhetorical hyperbole, and whether such statements were protected by qualified privilege.

I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In November 2009, Dr. Robert Smith, a trauma surgeon, and Dr. Bradley Cashion, an anesthesiologist, provided emergency care to a critically injured patient.  Dr. Smith is employed full-time by Carilion Medical Center ("Carilion").  Dr. Cashion was employed by Anesthesiology Consultants of Virginia, Inc., which provides services to Carilion.  Despite the efforts of Dr. Smith and Dr. Cashion, the patient died during surgery.

Following the patient's death, Dr. Smith criticized Dr. Cashion in the operating room.  Dr. Smith, in front of several

other members of the operating team, made the following remarks to Dr. Cashion:[1]

> "He could have made it with better resuscitation."
>
> "This was a very poor effort."
>
> "You didn't really try."
>
> "You gave up on him."
>
> "You determined from the beginning that he wasn't going to make it and purposefully didn't resuscitate him."

Immediately thereafter, Dr. Smith addressed Dr. Cashion in the hallway outside the operating room, stating: "You just euthanized my patient." Nurse Sherri Zwart, who also had been in the operating room, and Dr. James Crawford, Chief of Anesthesia at Carilion, were present in the hallway at the time. In a subsequent meeting that evening between Drs. Smith, Cashion, and Crawford, Dr. Smith repeatedly stated that Dr. Cashion "euthanized" the patient.

Dr. Cashion filed an amended complaint alleging defamation and defamation per se against Dr. Smith and Carilion, which Dr. Cashion alleged to be liable under a theory of respondeat superior. Dr. Smith and Carilion filed demurrers and pleas in bar asserting, among other things, that Dr. Smith's statements were non-actionable expressions of opinion or rhetorical

---

[1] We refer to these statements collectively as "the non-euthanasia statements."

hyperbole.  They also asserted that qualified privilege applied to the statements yet the amended complaint failed to allege facts establishing common law malice to overcome the privilege.

After a hearing, the circuit court entered an order ("the Demurrer Order") sustaining the demurrers and granting the pleas in bar as to the non-euthanasia statements on the ground that they were non-actionable expressions of opinion. Concomitantly, the court overruled the demurrers and denied the pleas in bar as to the euthanasia statements.  Dr. Smith and Carilion annotated the Demurrer Order with their objections on the grounds asserted in their pleadings and at the hearing. Dr. Cashion endorsed it "WE ASK FOR THIS."

Following discovery, Dr. Smith and Carilion moved for summary judgment, again asserting their rhetorical hyperbole and qualified privilege arguments.  Dr. Cashion responded by arguing, among other things, that qualified privilege did not apply because Dr. Smith did not make the euthanasia statements in good faith and was not discussing the care of the patient when he made them.

After a hearing, the circuit court ruled that the euthanasia statements were not rhetorical hyperbole.  However, it ruled that qualified privilege applied to Dr. Smith's statements and there was no evidence of common law malice on the part of Dr. Smith necessary to overcome the privilege.

3

Accordingly, it awarded Dr. Smith and Carilion summary judgment and dismissed the amended complaint. We awarded Dr. Cashion this appeal.

## II. ANALYSIS

### A. OPINION OR STATEMENTS OF FACT

Dr. Cashion asserts the circuit court erred by sustaining the demurrers and pleas in bar as to the non-euthanasia statements and ruling that they were non-actionable expressions of opinion. As an initial matter, Dr. Smith and Carilion argue that he has withdrawn or waived this argument for appeal under Code § 8.01-384(A) because he endorsed the Demurrer Order "WE ASK FOR THIS." They assert that endorsement stated his express written agreement with the rulings it contained. We disagree.

Code § 8.01-384(A) provides in relevant part that

> No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order. Arguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal.

We have on several occasions interpreted this statute to clarify the ambiguity of what constitutes a waiver by "express written agreement in [an] endorsement of [an] order." We have

4

repeatedly held that "once a litigant informs the circuit court of his or her legal argument, in order for a waiver to occur within the meaning of Code § 8.01-384(A), the record must affirmatively show that the party who has asserted an objection has abandoned the objection or has demonstrated by his conduct the intent to abandon that objection." Kellermann v. McDonough, 278 Va. 478, 491, 684 S.E.2d 786, 792 (2009) (quoting Helms v. Manspile, 277 Va. 1, 6, 671 S.E.2d 127, 129 (2009)) (internal alterations and quotation marks omitted).

We discussed waiver by endorsement at length in Chawla v. BurgerBusters, Inc., 255 Va. 616, 499 S.E.2d 829 (1998). In that case, the appellants assigned error to the circuit court's ruling that they bore the burden of proof on the question of the reasonableness of a claim for attorneys' fees. They noted objections to the interlocutory order effectuating that ruling but when the court restated it in a subsequent interlocutory order, they endorsed the second order as "SEEN AND AGREED." They again noted their objection to the ruling on the final order. Id. at 621-22, 499 S.E.2d at 832.

On appeal, the appellee argued the "SEEN AND AGREED" endorsement waived the issue. We disagreed, holding:

> Waiver is the voluntary and intentional
> abandonment of a known legal right,
> advantage, or privilege. Weidman v.
> Babcock, 241 Va. 40, 45, 400 S.E.2d 164,
> 167 (1991); Fox v. Deese, 234 Va. 412, 425,

5

> 362 S.E.2d 699, 707 (1987). The essential elements of waiver are knowledge of the facts basic to the exercise of the right and intent to relinquish that right. <u>Weidman</u>, 241 Va. at 45, 400 S.E.2d at 167; <u>Fox</u>, 234 Va. at 425, 362 S.E.2d at 707. <u>Waiver of a legal right will be implied only upon clear and unmistakable proof of the intention to waive such right</u> for the essence of waiver is voluntary choice. <u>Weidman</u>, 241 Va. at 45, 400 S.E.2d at 167; <u>May v. Martin</u>, 205 Va. 397, 404, 137 S.E.2d 860, 865 (1964).
>
> In the present case, the [appellants] made clear to the trial court [their] objection to the ruling respecting the burden of proof issue and never abandoned or evidenced an intent to abandon the objection. Thus, [they] preserved the issue for appeal.

<u>Id.</u> at 622-23, 499 S.E.2d at 833 (emphasis added). In short, the endorsement itself did not constitute a waiver.

We reached the same result in <u>Helms</u>, even though the appellant never noted an objection on any order. In that case, the appellants assigned error to the circuit court's ruling that they had failed to prove adverse possession by clear and convincing evidence. They endorsed as "Seen" the court's final order effectuating that ruling. 277 Va. at 5-6, 671 S.E.2d at 129. Noting that the appellants had argued adverse possession in a written memorandum, we held that the court was thereby informed of their position, which they had not subsequently expressly withdrawn or waived. <u>Id.</u> at 7, 671 S.E.2d at 129-30. Again, the endorsement itself did not constitute a waiver.

6

We considered the endorsement "Seen and consented to" in Johnson v. Hart, 279 Va. 617, 692 S.E.2d 239 (2010). In that case, the appellee assigned cross-error in an appeal from the circuit court's award of summary judgment in favor of the appellee. Considering whether the appellee's endorsement waived the issue argued in the assignment of cross-error, we noted that the order contained elements favorable to both parties. We concluded that the appellee's endorsement "Seen and consented to" indicated his consent only to the elements favorable to him, just as the appellant's endorsement "Seen and objected to" objected only to the elements adverse to her. Id. at 624, 692 S.E.2d 243 (alterations omitted). We also again observed that the appellee's legal argument had been presented to the court in written memoranda and acquiescence to the entry of an order partly in his favor did not affirmatively waive or abandon it.

The most recent case in which we considered the effect of a "WE ASK FOR THIS" endorsement was Lamar Corp. v. City of Richmond, 241 Va. 346, 402 S.E.2d 31 (1991).[2] However, our

_____

[2] In Lamar Corp., the City of Richmond condemned a parcel of real property. Portions of the parcel had been leased to two billboard advertising companies. The lessees were not parties to the condemnation proceeding. To the contrary, they entered a special appearance to assert that the city was required to institute a separate condemnation proceeding against them to acquire their interests in the parcels. Id. at 348-49, 402 S.E.2d at 32.

7

analysis did not address Code § 8.01-384(A).  The statute did not then include the provision, "[n]o party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order."  The General Assembly amended Code § 8.01-384(A)

---

The city and the landowners ultimately reached an agreement as to the value of just compensation.  The circuit court entered a consent order awarding the landowners $360,000 for "all right, title and interest in the property and property rights acquired" in the condemnation proceeding.  The order noted that the lessees appeared by special appearance, "without intending to subject either [of them] to the jurisdiction of th[e c]ourt in this action," and further directed that "the compromise and settlement between the City and [the landowners] shall have no effect upon further proceedings by the City against [the lessees] and neither the City nor [the lessees] shall be prejudiced in any way by such settlement in subsequent proceedings between the City and" the lessees.  Although the landowners and lessees endorsed the order "WE ASK FOR THIS," the lessees included "(special appearance)" in their endorsement.

When the city subsequently obtained permission from the court to remove the lessees' billboards from the parcel, the lessees appealed.  We held that a lessee is entitled by virtue of his lease to a portion of a landowner's award of compensation following a condemnation proceeding.  Id. at 350, 402 S.E.2d at 33.  We also held that a lessee who improves a parcel by constructing a fixture annexed to it (such as the billboards) is entitled to a portion of the landowner's award of compensation if the parcel is subsequently taken by condemnation.  Id. at 352, 402 S.E.2d at 34.  Nevertheless, we concluded that the lessees had waived any claim on the $360,000 awarded to the landowners because they had "asked for and consented to" the consent order, even though they had only entered a special appearance to argue that the city was required to commence a separate condemnation proceeding to acquire their interests.  Id.

8

to add this language in its session following our Lamar Corp. decision.  1992 Acts ch. 564.

Like the order in Johnson, the Demurrer Order contains elements favorable and unfavorable to Dr. Cashion.  Although it sustains demurrers by Dr. Smith and Carilion to the non-euthanasia statements, it overrules their demurrers to the accusations of euthanasia.  We have noted that "[i]t is entirely proper for a party to request that a court memorialize in an order a ruling made from the bench, even when that ruling is contrary to the party's interest." Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 56 n.4, 662 S.E.2d 44, 50 n.4 (2008).  Dr. Cashion's "WE ASK FOR THIS" endorsement on the Demurrer Order therefore reflects only his request that the court enter an order memorializing its ruling, not his agreement to the portion of the Demurrer Order adverse to him. It therefore does not constitute an "express written agreement" to waive this argument on appeal.

The question of whether the non-euthanasia statements were expressions of opinion is a question of law.  Hyland v. Raytheon Tech. Servs. Co., 277 Va. 40, 47, 670 S.E.2d 746, 750 (2009).  We therefore review the circuit court's ruling de novo.  Board of Supervisors v. Davenport & Co. LLC, 285 Va. 580, 585, 742 S.E.2d 59, 61 (2013).

9

"When a statement is relative in nature and depends largely on a speaker's viewpoint, that statement is an expression of opinion." Hyland, 277 Va. at 47, 670 S.E.2d at 750. However, statements may be actionable if they have a "'provably false factual connotation'" and thus "are capable of being proven true or false." Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 575 S.E.2d 858, 861-62 (2003) (quoting WJLA-TV v. Levin, 264 Va. 140, 156, 564 S.E.2d 383, 392 (2002)).

The statements "[t]his was a very poor effort," "[y]ou didn't really try," and "[y]ou gave up on him," fall into the former class because they are subjective and wholly depend on Dr. Smith's viewpoint. However, the statements that the patient "could have made it with better resuscitation" and "[y]ou determined from the beginning that he wasn't going to make it and purposefully didn't resuscitate him" do not.

The statement that the patient "could have made it with better resuscitation" directly attributes the patient's death to Dr. Cashion, insinuating that he either failed to perform some action necessary to the patient's recovery or acted affirmatively to prevent it. Insinuations may constitute defamatory statements. Hyland, 277 Va. at 47, 670 S.E.2d at 751. The statement asserts that the patient was capable of surviving, but for the quality of Dr. Cashion's treatment.

10

Whether the quality of Dr. Cashion's treatment caused or even contributed to the patient's death is an allegation of fact capable of being proven true or false, such as through expert opinion testimony. The second statement goes further, not only attributing the patient's death to Dr. Cashion's action or inaction but accusing him of purposefully causing the death by withholding treatment. Such a statement is indistinguishable from the alleged accusations of euthanasia.

Accordingly, the circuit court erred by ruling that these two statements were non-actionable expressions of opinion. We therefore will reverse this portion of its judgment and remand for further proceedings.

## B.  QUALIFIED PRIVILEGE

Dr. Cashion also asserts that the circuit court erred by ruling that Dr. Smith's euthanasia statements are protected by a qualified privilege and that Dr. Smith did not lose or abuse that privilege. A qualified privilege attaches to "[c]ommunications between persons on a subject in which the persons have an interest or duty." Larimore v. Blaylock, 259 Va. 568, 572, 528 S.E.2d 119, 121 (2000). Whether a communication is privileged is a question of law. Fuste, 265 Va. at 135, 575 S.E.2d at 863.

Dr. Smith's statements were communications on the subject of Dr. Cashion's care of the patient. Dr. Smith, Dr. Cashion,

11

and the medical professionals in the operating room during the patient's treatment all had a continuing interest in the level of care that had been provided and the cause of death. Dr. Crawford, as the Chief of Anesthesiology, is charged with managing and supervising the anesthesiologists; thus, he too shared an interest in Dr. Cashion's performance in the operating room. The circuit court therefore correctly determined that Dr. Smith's euthanasia statements were privileged as a matter of law.

Dr. Cashion argues that qualified privilege did not apply because Dr. Smith's statements were not made in good faith. This Court has on occasion previously included good faith as a factor in the determination of whether a qualified privilege exists. Great Coastal Express, Inc. v. Ellington, 230 Va. 142, 153, 334 S.E.2d 846, 853 (1985) (citing Taylor v. Grace, 166 Va. 138, 144, 184 S.E. 211, 213 (1936)). However, we recognize today that the inclusion of good faith in this context is unwarranted, and hereby overrule the inclusion of that language.

Indeed, historically, this Court has repeatedly recognized that the question of whether a statement was made in good faith is a question of fact for the jury to decide when determining whether a qualified privilege has been lost or abused, and is not a question of law for the court to answer in deciding

12

whether a privilege has attached. Aylor v. Gibbs, 143 Va. 644, 654, 129 S.E. 696, 699 (1925); Farley v. Thalhimer, 103 Va. 504, 507-08, 49 S.E. 644, 646 (1905); Tyree v. Harrison, 100 Va. 540, 542, 42 S.E. 295, 295 (1902); Strode v. Clement, 90 Va. 553, 556-57, 19 S.E. 177, 178 (1894). We reaffirm that approach.

Once a qualified privilege has attached to a communication, the plaintiff has the burden to prove that the privilege has been lost or abused, Preston v. Land, 220 Va. 118, 121, 255 S.E.2d 509, 511 (1979), which must be shown by clear and convincing proof. See Government Micro Res., Inc. v. Jackson, 271 Va. 29, 43, 624 S.E.2d 63, 71 (2006). In this case, the circuit court determined that a qualified privilege may be lost only by clear and convincing evidence of personal spite or ill will, independent of the occasion on which the communication was made. Dr. Cashion argues this ruling was erroneous because the issue of whether there was malice is a question of fact for the jury, and a showing of pre-existing personal spite or ill will is only one of several ways in which a privilege can be lost. We agree.

In Great Coastal Express, Inc. v. Ellington, 230 Va. 142, 154, 334 S.E.2d 846, 854 (1985), we approved a jury instruction on the elements of common law malice that will serve to defeat a qualified privilege that "incorporate[d] language used in a

13

number of our earlier cases which discuss elements of common law malice and abuse of privilege." A non-exhaustive list of such elements included a showing that: (1) the statements were made with knowledge that they were false or with reckless disregard for their truth, Raytheon Technical Servs. Co. v. Hyland, 273 Va. 292, 301, 641 S.E.2d 84, 89-90 (2007); (2) the "statements [we]re communicated to third parties who have no duty or interest in the subject matter," Larimore, 259 Va. at 575, 528 S.E.2d at 122; (3) the statements were motivated by personal spite or ill will, Preston, 220 Va. at 120-21, 255 S.E.2d at 511; (4) the statements included "strong or violent language disproportionate to the occasion," Story v. Norfolk-Portsmouth Newspapers, Inc., 202 Va. 588, 591, 118 S.E.2d 668, 670 (1961); or (5) the statements were not made in good faith, Chalkley v. Atlantic Coast Line R.R. Co., 150 Va. 301, 325, 143 S.E. 631, 637-38 (1928). We held that "[a]ny one of the elements if proved" by clear and convincing evidence, defeats the privilege. Great Coastal Express, 230 Va. at 154, 334 S.E.2d at 854.

Today we reiterate the rule of Great Coastal Express. Personal spite or ill will, independent of the occasion on which it was made, is certainly one of the elements that will establish common law malice. However, it is not the only

14

element, and any one of the elements, if pled and proved, will suffice.  Id. at 154, 334 S.E.2d at 854.

The question of whether a defendant has lost or abused the privilege is a question of fact for the jury.  Fuste, 265 Va. at 135, 575 S.E.2d at 863 (collecting cases).  Because the circuit court limited the elements capable of defeating a qualified privilege to the showing of personal spite or ill will, independent of the occasion on which it was made, it erred by deciding as a matter of law that Dr. Smith did not lose or abuse the privilege.  We therefore will reverse this portion of the circuit court's judgment and remand for further proceedings.

## C.   RHETORICAL HYPERBOLE

Dr. Smith and Carilion assert in assignments of cross-error that Dr. Smith's statements accusing Dr. Cashion of committing euthanasia constitute nothing more than rhetorical hyperbole and therefore are not actionable.  We disagree.

Under Virginia law, rhetorical hyperbole is not defamatory.  Yeagle v. Collegiate Times, 255 Va. 293, 295-96, 497 S.E.2d 136, 137 (1998).  Statements characterized as rhetorical hyperbole are those from which "no reasonable inference could be drawn that the individual identified in the statements, as a matter of fact, engaged in the conduct described."  Id. at 296, 497 S.E.2d at 137.  Whether a

15

statement constitutes rhetorical hyperbole is a question of law for the court to determine. Id. at 296, 497 S.E.2d at 138.

In this case, as noted above, some of Dr. Smith's statements can reasonably be interpreted as allegations of fact capable of being proven true or false. Considering the context in which the statements were made, a listener could believe that Dr. Cashion engaged in the conduct Dr. Smith attributed to him, i.e., euthanizing the patient or causing or contributing to the patient's death by providing deficient care. Dr. Smith's position as a surgeon, having just left the operating room where the patient died, and his relationship to Dr. Cashion, an anesthesiologist whose participation in the surgery afforded him the opportunity to cause or contribute to the patient's death, support the inference that Dr. Smith was conveying what he believed to be factual information about Dr. Cashion. Thus, we agree with the circuit court's determination that the statements were not rhetorical hyperbole. We therefore will affirm this portion of the circuit court's judgment.

### III. CONCLUSION

For the foregoing reasons, we will affirm the circuit court's rulings that Dr. Smith's statements are not rhetorical hyperbole and that the statements enjoy a qualified privilege. However, we conclude that the circuit court erred by ruling

16

that Dr. Smith's statements that the patient "could have made it with better resuscitation" and that Dr. Cashion "determined from the beginning that he wasn't going to make it and purposefully didn't resuscitate him" were non-actionable expressions of opinion.  We also conclude that the circuit court erred by ruling that qualified privilege can be lost or abused only upon a showing of personal spite or ill will.  We therefore will reverse those portions of the circuit court's judgment and remand for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

JUSTICE McCLANAHAN, dissenting.

I agree with Justice Powell that Dr. Cashion waived any objection to challenge the non-euthanasia statements for the reasons stated in her analysis of that issue.  Therefore, I also would not reach the merits of Dr. Cashion's argument that the circuit court erred in determining that the non-euthanasia statements were expressions of opinion.  As to the euthanasia statements, however, I would hold they are protected by the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia as rhetorical hyperbole and, therefore, not actionable.

17

Both the United States Supreme Court and this Court have recognized that putatively defamatory statements that are not literal assertions of "actual fact" but, instead, "rhetorical hyperbole," are constitutionally protected free speech. See, e.g., Milkovich v. Lorain Journal Co., 497 U.S. 1, 16-17 (1990); Letter Carriers v. Austin, 418 U.S. 264, 284-86 (1974); Greenbelt Coop. Publ'g Ass'n v. Bresler, 398 U.S. 6, 13-14 (1970); Yeagle v. Collegiate Times, 255 Va. 293, 295-96, 497 S.E.2d 136, 137-38 (1998); Crawford v. United Steel Workers, AFL-CIO, 230 Va. 217, 234-35, 335 S.E.2d 828, 838-39 (1985). "The First Amendment's shielding of figurative language reflects the reality that exaggeration and non-literal commentary have become an integral part of social discourse." Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 128 (1st Cir. 1997). Such protected speech specifically includes words that are "sure to be understood as merely a label for the labeler's underlying assertions," Dilworth v. Dudley, 75 F.3d 307, 309 (7th Cir. 1996), and exaggerated rhetoric intended to convey outrage or condemnation. Greenbelt, 398 U.S. at 14; CACI Premier Technology, Inc. v. Rhodes, 536 F.3d 280, 301-03 (4th Cir. 2008); Horsley v. Rivera, 292 F.3d 695, 701-02 (11th Cir. 2002). In other words, rhetorical hyperbole is not actionable because the speaker is not asserting a statement of

18

fact, but is using exaggerated or figurative language to drive home an underlying factual assertion or point of view.

In assessing Dr. Cashion's claim of defamation based on the euthanasia statements, we must consider those statements in the context of the entirety of the statements made by Dr. Smith and the circumstances in which the statements were made. Yeagle, 255 Va. at 297-98, 497 S.E.2d at 138; Lewis v. Kei, 281 Va. 715, 725-26, 708 S.E.2d 884, 891-92 (2011). Dr. Cashion alleges in his amended complaint that, outside of the operating room, Dr. Smith accused him of euthanizing the patient when Nurse Zwart and Dr. Crawford, Chief of Anesthesia at the Carilion Clinic, were both present, and, again, during a conversation between Dr. Cashion, Dr. Crawford, and Dr. Smith shortly thereafter. Dr. Cashion's allegations in his amended complaint and his responses to requests for admission make clear that Dr. Smith made the euthanasia statements immediately following a high-stress trauma situation, in the context of criticizing Dr. Cashion's efforts to resuscitate a "critically injured patient" whose "demise seemed imminent."

Furthermore, we must accept Dr. Cashion's theory of defamation that Dr. Smith accused him of "the commission of a criminal offense involving moral turpitude, specifically, deliberately causing the death of another person, for which Dr.

Cashion may be indicted and punished."[1]  See Horsley, 292 F.3d at 701 (having alleged that defendant defamed plaintiff by stating he is chargeable with a felony, plaintiff is bound by that construction of the statements).  Dr. Cashion argued in the circuit court that the accusation of euthanasia was "a straightforward allegation of the purposeful killing" through the use of a "calculated medical term to proclaim that another doctor had executed [the patient]."  Similarly, in this Court, he argues that Dr. Smith accused him of "purposefully kill[ing] the patient like he was an animal."[2]

Examining the context surrounding the euthanasia statements and considering the entirety of the statements made by Dr. Smith in light of Dr. Cashion's theory of defamation, I would conclude that no reasonable hearer would have understood Dr. Smith's euthanasia statements as literally accusing Dr. Cashion of a crime for which he could be indicted and punished,

---

[1] Virginia does not permit "mercy killing or euthanasia" or "any affirmative or deliberate act or omission to end life other than to permit the natural process of dying."  See Code § 54.1-2990(D).

[2] Dr. Cashion's theory of defamation is advanced repeatedly throughout his brief wherein he argues that in making the euthanasia statements, Dr. Smith "accused Dr. Cashion of killing the patient," made a "statement of medical fact that Dr. Cashion had killed a patient," and "suggested that Dr. Cashion had intentionally dispatched the patient as if he were an animal."

i.e., criminal homicide.[3]  Dr. Smith allegedly accused Dr.

Cashion of "euthaniz[ing his] patient" while criticizing Dr.

Cashion for what he viewed as poor resuscitation efforts on a

critically injured patient whose death was imminent.[4]  The

statements were made in the presence of Dr. Crawford, who was

familiar with the medical condition of the patient and the

nature of Dr. Smith's criticisms of Dr. Cashion, and a nurse

involved in the resuscitation of the patient.  All of the

statements related to the treatment Dr. Cashion rendered to an

already dying patient in the presence of numerous medical

---

[3] In concluding the euthanasia statements could be construed as stating facts about Dr. Cashion, the circuit court reasoned that "it is believable that a surgeon's euthanasia comment about an anesthesiologist, directly after a patient has died on the operating table, meant that the anesthesiologist committed malpractice, and euthanized a hopeless patient." Likewise, the majority states that a listener could believe Dr. Cashion "caus[ed] or contribut[ed] to the patient's death by providing deficient care."  This reasoning wholly ignores Dr. Cashion's theory of defamation regarding the euthanasia statements, which is that Dr. Smith accused him of a crime, not just malpractice or deficient care.  See Horsley, 292 F.3d at 701.

[4] In fact, because as Dr. Cashion asserts, the patient's death from his injuries was imminent and the prohibition on euthanasia in Virginia does not extend to permitting the natural process of dying, see Code § 54.1-2990(D), the actual circumstances in which the statements were made would not permit a reasonable inference that Dr. Cashion criminally euthanized the patient or that Dr. Smith was stating, as a literal fact, that Dr. Cashion had criminally euthanized the patient.

providers.[5]  Thus, the reasonable hearer of the euthanasia statements would have understood Dr. Smith's statements as an exaggerated expression of outrage at Dr. Cashion's resuscitation efforts, not a literal accusation of fact – that Dr. Cashion committed a criminal homicide.[6]  See Greenbelt, 398 U.S. at 14 (even the most careless reader would have perceived the word "blackmail" as a vigorous epithet used by those who considered a real estate developer's negotiating position unreasonable and not as a charge of the commission of a criminal offense); Horsley, 292 F.3d at 702-03 (reasonable viewer would have understood defendant's use of phrase "accomplice to murder" as an expression of outrage, and not an accusation of the commission of a crime).  Accordingly, the use

---

[5] Although Dr. Cashion acknowledges that if taken literally, Dr. Smith would have been accusing him of the intentional killing of a patient in the presence of other health care providers, he posits that because the euthanasia could have been performed "without attracting attention," the statement could reasonably be believed.

[6] Dr. Cashion argues that because he was an anesthesiologist and, therefore, capable of euthanasia, the statement could be taken to be literally true.  While out of context, accusing an anesthesiologist of euthanizing a patient because an anesthesiologist is capable of such an act could be taken as a literal statement of fact, we must examine the entirety of the statements in the context in which the statements were allegedly made, consider the identity of those who allegedly heard them, and determine what they reasonably would have believed under those circumstances.  Yeagle, 255 Va. at 297-98, 497 S.E.2d at 138-39; Lewis, 281 Va. at 725-26, 708 S.E.2d at 891-92.

of the word "euthanize" in this context was, in my view, a figurative label for Dr. Smith's underlying criticisms, and would have been understood as such by the medical personnel who heard the euthanasia statements.[7]

Further supporting the conclusion that Dr. Smith used the term "euthanasia" figuratively is Dr. Cashion's own allegation in his amended complaint that Dr. Smith admitted he never believed Dr. Cashion actually committed euthanasia. Thus, the circuit court could not properly conclude, as it did, that "[i]f that is what Smith believed to have occurred, then a euthanasia comment would not be hyperbole."

For these reasons, I would hold the circuit court erred in its determination that the euthanasia statements were not rhetorical hyperbole. However, because I believe the circuit court reached the right result, I would affirm the circuit court's grant of summary judgment. See Deerfield v. City of Hampton, 283 Va. 759, 767, 724 S.E.2d 724, 728 (2012) (applying the right result for the wrong reason doctrine).

---

[7] Dr. Smith's use of non-literal language to make his point was not limited to his euthanasia statements since, as Dr. Cashion alleges in his amended complaint, Dr. Smith used a basketball analogy when he told Dr. Cashion in the presence of other medical personnel: "We [the trauma surgeons] were playing full court press and you were playing four corners" with the patient's life.

JUSTICE POWELL, with whom JUSTICE GOODWYN joins, concurring in part and dissenting in part, and with whom JUSTICE McCLANAHAN joins in part.

I concur in the Court's judgment in all respects with regard to the euthanasia statements.  However, I believe that we need not reach the merits of Dr. Cashion's argument that the circuit court erred in determining that the non-euthanasia statements were protected statements of opinion instead of actionable statements of fact, as Dr. Cashion expressly waived any such argument regarding the non-euthanasia statements. Therefore, I respectfully dissent from Part II.A. of the majority opinion.

Although we have previously considered the endorsement, "WE ASK FOR THIS" as indicating that a party has "asked for and consented to an order," Lamar Corp. v. City of Richmond, 241 Va. 346, 349, 352, 402 S.E.2d 31, 32, 34 (1991), I recognize that we have yet to consider such an endorsement in the context of Code § 8.01-384(A).

Code § 8.01-384(A) provides in relevant part as follows:

> No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order.

(Emphasis added.)

In the present case, it is undisputed that counsel for Dr. Cashion endorsed the Demurrer Order with the signature-block notation: "WE ASK FOR THIS."  The only logical interpretation of such an endorsement is that it is a request for the circuit court to enter the order as drafted, and therefore it constitutes an "express written agreement" with the terms of the order pursuant to Code § 8.01-384(A).  Dr. Cashion, having agreed with "the action taken by the trial court [entering the order], should not [now] be allowed to assume an inconsistent position."  Clark v. Commonwealth, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979).

> Code § 8.01-384(A) goes on to state:
> Arguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal.

(Emphasis added.)

A review of the orders in the case also indicates that counsel for Dr. Cashion knew the difference between objecting to a ruling as opposed to expressly agreeing with one.  When endorsing an order with which he agreed, i.e., the order granting leave to amend his complaint, the order granting the motion to correct misnomer and the order at issue here, counsel

for Dr. Cashion used the language: "WE ASK FOR THIS."[1]  However, when objecting to an order, such as the final order granting summary judgment, Dr. Cashion's counsel used the endorsement language "Seen and objected to," despite the fact the circuit court ruled partly in Dr. Cashion's favor by denying the motion for summary judgment on the issues relating to treating the statements made in the hallway as non-actionable rhetorical hyperbole.  Clearly, when Dr. Cashion intended to object to a ruling of the circuit court, he did so.  Here, he did not.

Contrary to the majority opinion, there is nothing in the record indicating that the Demurrer Order "reflects only [Dr. Cashion's] request that the court enter an order memorializing its ruling."  Indeed, it is clear that the circuit court ordered counsel for Dr. Cashion to "prepare an appropriate order and, after endorsements, send it to the Court for entry." (JA 67).  Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 56 n.4, 662 S.E.2d 44, 50 n.4 (2008), the case upon which the majority relies for this notion, is inapposite to the present case.  The actual issue in Levisa Coal involved the right of a party to request that a court memorialize its ruling in an order.  As previously noted, there is nothing in the

---

[1] Tellingly, Dr. Cashion signed this order "WE ASK FOR THIS" despite the fact that the demurrer was filed by Dr. Smith and Carilion.  Additionally, although Dr. Smith and Carilion prevailed in part, they each noted their objections to the circuit court's ruling.

record that even remotely indicates that Dr. Cashion requested the circuit court memorialize its ruling. Furthermore, in Levisa Coal, the appellant specifically noted its objections and the trial court expressly reserved those objections by reference in its order. Id. In the present case, however, the Demurrer Order was drafted by counsel for Dr. Cashion, contained no reservation of objections and, in fact, affirmatively asked the trial court for dismissal of the claims based on the non-euthanasia statements.

In Johnson v. Hart, 279 Va. 617, 624, 692 S.E.2d 239, 243 (2010), we held that an appellee's endorsement of an order granting summary judgment in his favor with "[s]een and consented to" did not constitute an express waiver under Code § 8.01-384 of the arguments he previously presented to the circuit court. Considering the context of the endorsement in that case – that it was made by the prevailing party on a final order that dismissed the case with prejudice in his favor – we concluded that "[s]een and consented to" only "indicate[d] that [appellee] consented to the trial court's order granting his motion for summary judgment," and did not convey his acquiescence with every ruling the circuit court made in granting the motion. Id. at 624, 692 S.E.2d at 243.

Johnson differs from the present case in that there is a distinction between a recognition that the circuit court has

27

ruled for a party and that party "consents" to the entry of a proper final order and the relief contained therein, and a party's affirmative request for the entry of an order and the relief contained therein.  The latter clearly indicates that the party has yielded its position.  Moreover, the Demurrer Order was not a final order disposing of the case in Dr. Cashion's favor; rather, the circuit court ruled both for and against Dr. Cashion, and the case proceeded.

I feel compelled to point out that the majority has made it virtually impossible for a party to "forfeit his right to contest [an] order on appeal" under Code § 8.01-384(A).  According to the majority, an express, written statement asking for a specific order and the relief contained therein with no objections noted is insufficient to waive an objection.  Thus, under the majority's rubric, for Dr. Cashion to waive his objections, he would be required to endorse the order with the statement: "I am affirmatively waiving my objection to the demurrer on the non-euthanasia statements."

In considering what constitutes waiver under Code § 8.01-384(A), we have recognized that:

> Once a litigant informs the circuit court of his or her legal argument, in order for a waiver to occur within the meaning of Code § 8.01-384(A), <u>the record must affirmatively show that the party who has asserted an objection has abandoned the objection or has demonstrated by his</u>

28

> conduct the intent to abandon that
> objection.

Helms v. Manspile, 277 Va. 1, 6, 671 S.E.2d 127, 129 (2009) (internal quotation marks and alteration omitted) (emphasis added).

In my opinion, the record clearly reveals that, in addition to expressly abandoning his objection in writing, Dr. Cashion "demonstrated by his conduct the intent to abandon [the] objection." Helms, 277 Va. at 6, 671 S.E.2d at 129 (internal quotation marks omitted). The focus of his pleadings and argument was on the statements relating to "euthanasia" and not the non-euthanasia statements. For example, in the Amended Complaint, Dr. Cashion alleged "[a] simple apology from Dr. Smith acknowledging that Dr. Cashion did not 'euthanize' the patient would have sufficed to end the matter at this early stage." Notably, he makes no mention of an apology for the non-euthanasia comments. Further, during the course of the hearing, counsel for Dr. Cashion mentioned the word "euthanasia" or some form of it, (e.g., "purposely killed") at least six times. By contrast, he referred to the non-euthanasia statements only once, and even then, only as factual support for the euthanasia statements.

Further, the majority fails to consider the unintended consequences of its holding. In my opinion, the majority fails

to give appropriate consideration to Dr. Cashion's actions.  If the conduct of a party is no longer considered in determining affirmative waiver, then I believe that the majority has opened the floodgates to invited error.  Under the majority's approach, as long as a party does not endorse an order in a manner that specifically waives the objection, that party's objection to that order would be preserved regardless of that party's subsequent actions.  But see Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970)) (recognizing that a party that unsuccessfully objects to an action of the trial court waives that objection when he subsequently acts in a manner that runs counter to his objection).

By endorsing the order with "WE ASK FOR THIS" and failing to note any objections, Dr. Cashion affirmatively requested, and therefore yielded to, the terms of the entire Demurrer Order.  Thus, he abandoned any objections he may have had to the order.  Accordingly, I would hold that Dr. Cashion has waived his arguments on appeal regarding the actionability of the non-euthanasia statements.